# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **VICKI OSTENDORF,** | : |
| | : Case No. 2:19-CV-1147 |
| **Plaintiff,** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : |
| | : **Magistrate Judge Jolson** |
| **GRANGE INDEMNITY INSURANCE** | : |
| **COMPANY,** | : |
| | : |
| **Defendant.** | : |

## OPINION & ORDER

This matter is before the Court on Defendant Grange Indemnity Insurance Company's Motion to Dismiss or, in the alternative, Stay and Compel Appraisal. (ECF No. 7). For the following reasons, Defendant's Motion is hereby **DENIED.**

## I. BACKGROUND

On March 27, 2019, Plaintiff Vicki Ostendorf ("Ostendorf") filed a Complaint on behalf of herself and those similar situated against Grange Indemnity Insurance Company ("Grange"), bringing claims for breach of contract and declaratory relief related to her auto insurance policy with Grange ("the Policy"). (ECF No. 1). Ostendorf insured her 2001 Grand Prix vehicle with Grange. (*Id.* at ¶¶ 12-13). On or about May 6, 2018, the insured vehicle was involved an accident and Ostendorf filed a total loss insurance claim. (*Id.* at ¶ 14). Grange determined that the vehicle was worth $1,773, and after applying a $100 deductible, paid Ostendorf $1,673. (*Id.* at ¶ 15).

Plaintiff alleges that Defendant Grange underpaid her and similarly situated policy holders for failing to include the cost of a title transfer, tag transfer, and 6% sales tax in the

"actual cash value" ("ACV") calculation under the Policy for reimbursements of total losses. (*Id.* at ¶ 21). Plaintiff brings a breach of contract claim, alleging Grange's failure to pay sales tax and registration fees amounts to a material breach of their insurance policy contract, and a claim for declaratory relief that an insured under the policy is entitled to sales tax and registration fees for total loss claims. (*Id.* at ¶¶ 69, 72, 75). On May 30, 2019, Defendant Grange moved to dismiss the Complaint for failure to state a claim, or in the alternative, moved the Court to stay and compel Plaintiff to participate in the mandatory appraisal process pursuant to the Policy. (ECF No. 7 at 1). Plaintiff filed her Response in Opposition to the Motion to Dismiss on June 20, (ECF No. 12), and Grange filed its Reply on July 17. (ECF No. 15). The Motion to Dismiss is now ripe for review.

## II. STANDARD OF REVIEW

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

2

Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. LAW & ANALYSIS

#### A. Breach of Contract

In her Complaint, Plaintiff brings a claim for breach of contract and seeks a declaratory judgment that Grange is required to pay sales tax and vehicle fees as part of the "actual cash value" ("ACV") owed to her for the total loss of her vehicle. To state a breach of contract claim under Ohio law, Plaintiff must show: "(1) existence of a valid contract; (2) performance by the plaintiff; (3) non-performance by the defendant; and (4) damages resulting from the defendant's breach." *Yoder v. Hurst*, No. 07AP-121, 2007 WL 27943 at *5 (Ohio Ct. App. 2007). Defendant Grange argues that Plaintiff has failed to allege elements 3 and 4. (ECF No. 7 at 6). Grange argues that Plaintiff has not alleged non-performance because there is nothing in the plain language of the Policy that defines ACV or otherwise requires Grange to reimburse insureds for sales tax and vehicle fees. (*Id.* at 6). Furthermore, Grange argues Plaintiff cannot show damages related to sales tax or vehicle fees until or unless she actually incurs such expenses by replacing her vehicle. (ECF No. 7 at 5-6).

3

1. Non-performance

In determining whether Plaintiff's claims survive Defendant's Motion to Dismiss, the Court starts with the language of the Policy. Under Part D, "Coverage For Damage to Your Auto," the Policy states: "Subject to the limit of liability, we will pay for sudden, direct and accidental loss to your covered auto." (ECF No. 1 Ex. A at 21). The Policy defines the limit of liability as the lesser of the:

> 1. Actual cash value of the stolen or damaged property, reduced by the salvage value if you or the owner retain the salvage;
>
> 2. Amount necessary to repair or replace the property using parts from the vehicle's manufacturers or parts from other manufacturers

(*Id.* at 24-25). The Policy does not define "loss" or "ACV." Both parties acknowledge Black's Law Dictionary defines "loss" in the insurance context as the "amount of financial detriment caused by an insured person's death or an insured property's damage for which the insurer becomes liable." (ECF No. 7 at 7; ECF No. 12 at 3-4 (quoting Black's Law Dictionary 956 (7th ed. 1999)). Defendant argues that, until or unless Plaintiff replaces the vehicle, she has suffered no "loss" related to sales tax or vehicle fees. (ECF No. 7 at 6). Plaintiff responds that actual replacement is irrelevant to the insurer's obligation. (ECF No. 12 at 4). The Sixth Circuit in *Parkway Associates, LLC v. Harleysville Mutual Ins. Co.* made clear that the calculation of the actual cash value of the loss does not require actual repair or replacement of the damaged property. 129 Fed. Appx 955, 962-63 (6th Cir. 2005). There, the Court found "even if Parkway chooses not to repair its property at all, it would still be entitled to what it bargained fair: the actual cash value of its loss, which includes contractor's overhead and profit where a contractor would reasonably be utilized to make repairs." *Id.* Likewise here, the calculation of the ACV of Plaintiff's vehicle is not dependent on whether she actually replaces it.

Grange goes on to argue that Plaintiff's claims are barred by the Ohio Administrative Code, which permits insurance companies to reimburse insureds for sales taxes after the purchase of a replacement vehicle. It relies on § 3901-1-54(H)(7)(f), which states:

> If within thirty days of receipt by the claimant of a cash settlement for the total loss of an automobile, the claimant purchases a replacement automobile, the insurer shall reimburse the claimant for the applicable sales taxes incurred on account of the claimant's purchase of the automobile, but not to exceed the amount that would have been payable by the claimant for sales taxes on the purchase of an automobile with a market value equal to the amount of the cash settlement. If the claimant purchases an automobile with a market value less than the amount of the cash settlement, the insurer shall reimburse only the actual amount of the applicable sales taxes on the purchased automobile. If the claimant cannot substantiate such purchase and the payment of such sales taxes by submission to the insurer of appropriate documentation within thirty-three days after receipt of the cash settlement, the insurer shall not be required to reimburse the claimant for such sales taxes.

Ohio Admin. Code § 3901-1-54(H)(7)(f). Defendant claims this section of the Administrative Code "unequivocally provides that an insurer's obligation to reimburse insureds for sales tax is contingent upon the insured having actually replaced the loss vehicle." (ECF No. 7 at 8). While it is true that the Code sets forth a minimum obligation, this is the statutory floor. As Plaintiff argues, the Code is not incorporated by default as the definition of coverage in individual insurance policies. (ECF No. 12 at 14). The code makes clear that "[i]nsurers may also provide coverage that exceeds the requirements of the statute." Ohio Admin. Code § 3901-1-54(H)(7). Therefore, the obligations set forth in § 3901-1-54(H)(7)(f) do not provide support for Defendant's argument that its own policy of covering "actual cash value" of total losses necessarily excludes sales taxes.

Under Ohio law, ACV "is defined as either the market value at the time of the accident or the replacement cost of the vehicle minus depreciation." *Schaller v. National Alliance Ins. Co.*, 496 F. Supp. 2d 890, 897 (S.D. Ohio 2007). These definitions alone do not resolve the question of whether sales tax and vehicle fees are encompassed within these terms, nor has Ohio case law

5

addressed this question. Defendant argues that ACV does not include sales tax or vehicle fees. It cites to *Sigler v. Geico Cas. Co.*, where the Central District of Illinois rejected similar claims, finding nothing in the express language of the contract constituted a promise to pay such taxes and fees and Plaintiff's claim was "simply too speculative." 2019 WL 2130137, *3 (C.D. Ill. May 15, 2019). Plaintiff says *Sigler* is an outlier, and that a number of jurisdictions have reached the opposite result. (ECF No. 12 at 7). *See, e.g., Sos v. State Farm*, 396 F. Supp. 3d 1074, 1081 (M.D. Fla. 2019) (failure to pay sales tax and transfer fees constituted breach of contract for promise to pay actual cash value under Florida law); *Lukes v. Am. Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1015 (D. Ariz. 2006) (finding that even if defined as "fair market value," ACV would include necessarily-incurred replacement costs such as sales tax); *Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) ("actual cash value" means "any cost that an insured is reasonably likely to incur in repairing or replacing a covered loss" and "sales tax clearly fits this definition").

It is true that there is no express provision of Grange's insurance policy that requires the payment of sales tax and vehicle fees. But that is not Plaintiff's argument, nor was it the argument of the plaintiffs in the cases in other jurisdictions that Ostendorf cites finding ACV includes taxes and fees. This Court finds that *Sigler* is an outlier and applied too stringent a standard to the breach of contract claim. Plaintiff argues that the promise to pay "actual cash value" includes sales tax and registration fees because the point of ACV is to cover the full cost of replacing the vehicle. (ECF No. 12 at 4). This Court concludes that the term "actual cash value" is at least ambiguous under the Policy and there is a presumption that, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Jones v.*

6

*Auto Owners Mut. Ins. Co.*, No. L-98-1297, 1999 WL 435103, at *4 (Ohio Ct. App. 1999) (quoting *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988)). Because this Court finds "actual cash value" is ambiguous under the Policy, and Plaintiff's interpretation is reasonable, this Court finds Plaintiff has alleged facts sufficient to meet the non-performance element of the breach of contract claim, as well as state a claim for declaratory judgment against Grange for failing to reimburse her and similarly situated individuals for sales tax and vehicle fees in total loss claims.

2.  Damages

Defendant also claims that Plaintiff has not sufficiently alleged any damages as a result of the alleged breach, though it does not expand upon that argument. (ECF No. 7 at 6). To the extent Defendant suggests Plaintiff has not suffered damages for the same reason she has not suffered a "loss" under the Policy because she has not replaced her vehicle, this Court rejects that argument for similar reasons. Plaintiff's alleged damages are the cost of replacing her vehicle, which she alleges includes the sales tax and vehicle fees, regardless of whether she chooses to actually replace it.

**B. Mandatory Appraisal**

Defendant argues that, even if the Court finds Plaintiff's claims would otherwise survive a 12(b)(6) motion to dismiss, the Court should stay the case and compel Plaintiff to submit to mandatory appraisal under the Policy. The Policy provides:

> A. If we and you do not agree on the actual value of the vehicle, either party may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the written demand is received. The two appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days,

7

> you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers will state separately the actual cash value and the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(ECF No. 1 Ex. A at 26). Defendant argues that Plaintiff cannot proceed with the lawsuit now that Defendant is invoking its right to submit the dispute to appraisal. (ECF No. 7 at 10).

This Court finds that an appraisal would not resolve the claims at issue in this case. Plaintiff does not, as Grange suggests, "disagree[] with Grange's valuation of her car." (*Id.* at 11). Rather, her case is a dispute over the definition of the Policy language—whether ACV includes sales tax and vehicle fees. It is clear from Defendant's original valuation that Defendant does not believe ACV includes such taxes and fees. Submitting to the appraisal process would not change this result. Plaintiff does not dispute the valuation of her vehicle at the time of the total loss, but rather the meaning of the term, "actual cash value." (ECF No. 12 at 16). This Court, therefore, concludes that the dispute is not about the amount of loss, but about the scope of the coverage. Questions such as this one, where the court must determine the language of the insurance contract, are a matter of law. *See Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d 1021, 1025 (Fla. 2002) ("when the insurer admits that there *is* a covered loss, but there is a disagreement on the *amount* of loss, it is for the appraisers to arrive at the amount to be paid") (quoting *State Farm Fire and Cas. Co. v. Licea*, 685 So.2d 1285, 1287-88 (Fla. 1996)). For these reasons, this Court **DENIES** Defendant's Motion to Stay and Compel Appraisal.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or, in the alternative, Stay and Compel Appraisal, is hereby **DENIED.**

**IT IS SO ORDERED.**

                                          s/Algenon L. Marbley
                                         **ALGENON L. MARBLEY**
                                         **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: January 13, 2020**