UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VICKI OSTENDORF,

                Plaintiff,

      v.

GRANGE INDEMNITY INSURANCE
COMPANY,

                Defendant.

Judge Algenon L. Marbley

Magistrate Judge Kimberly A. Jolson

Case No.: 2:19-CV-01147-ALM-KAJ

## PLAINTIFF'S UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Vicki Ostendorf, moves this Court for Preliminary Approval of the class action settlement reached between the parties. As set forth in the attached Memorandum in Support, the Parties have reached a classwide settlement and request that this Court grant preliminary approval in accordance with Rule 23 of the Federal Rules of Civil Procedure. Further, as part of this motion and to effectuate the settlement, Plaintiff requests that the Court grant leave to file an Amended Complaint adding the related Grange entities as named Defendants.

DATED: August 5, 2020.

/s/ Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
Jeff Ostrow (*pro hac vice*)
Joshua R. Levine (*pro hac vice*)
1 W Las Olas Blvd, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
levine@kolawyers.com

**SPANGENBERG SHIBLEY &
LIBER LLP**
Stuart Scott, Esq.
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 33114
sscott@spanglaw.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (*pro hac vice*)
20900 NE 30th Avenue
Suite 417
Aventura, FL 333180
scott@edelsberglaw.com

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq. (*pro hac vice*)
300 S Biscayne Blvd
Suite 2704
Miami, FL 33131
rachel@dapeer.com

**SHAMIS & GENTILE, P.A.**
Andrew Shamis, Esq. (*pro hac vice*)
14 NE 1st Avenue
Suite 1205
Miami, FL 33132
ashamis@shamisgentile.com

*Counsel for Plaintiff and the Settlement Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VICKI OSTENDORF, on behalf of herself and
all others similarly situated,

               Plaintiff,

      vs.

GRANGE INDEMNITY INSURANCE
COMPANY, an Ohio corporation,

           Defendant.

CASE NO.  2:19-CV-01147-ALM-KAJ

Magistrate Judge Kimberly A. Jolson

Case No.: 2:19-CV-01147-ALM-KAJ

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I. __INTRODUCTION__

Plaintiff, Vicki Ostendorf, respectfully moves for Preliminary Approval of the Settlement Agreement, attached as __*Exhibit A*__, which will resolve all claims against Defendants, Grange Indemnity Insurance Company, Grange Insurance Company f/k/a Grange Mutual Casualty Company, Grange Property and Casualty, and Trustgard Insurance Company (collectively "Grange")[1] in the Action.[2] Preliminary Approval should be granted because the Settlement provides substantial relief for the Settlement Class and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.  Indeed, the Settlement – which provides for Grange's agreement to separately pay: (a) up to $12,667.804.00 in Cash Settlement Benefits to Settlement Class Members who will receive 100% of their actual losses they could have received at trial; (b) all Settlement Administration Costs; and (c) Class Counsel Fees and Plaintiff's Service Award, as approved by this Court – is an outstanding result for the Settlement Class. The Settlement satisfies all Sixth Circuit criteria for approval. Consequently, this Settlement is fair and reasonable and merits approval.

## II. __BACKGROUND__

### A. __Class Counsel's Investigation and Procedural History__

On March 27, 2019, Plaintiff filed this putative class action alleging that Grange systematically underpays its insureds on auto insurance claims by excluding Sales Tax and Title, Transfer, and Service Fees from the payment it makes when it declares the vehicle a total loss and purports to pay the actual cash value ("ACV"). (Doc. 1). On May 30, 2019, Defendant filed a Motion to Dismiss or, in the Alternative, Stay and Compel Appraisal ("Motion to Dismiss"). (Doc. 7). In the Motion to Dismiss, Defendant argued (a) Sales Tax and Title, Transfer, and Service Fees are not included under ACV under the policy definitions; and (b) Ohio law expressly provides that insurers need not pay sales tax

---

[1] Should the Court grant Preliminary Approval, Plaintiff will file an Amended Complaint naming all the additional Grange entities as Defendants. All of the Grange entities issued insurance policies that are identical in material respects and used the same policies and procedures for payment of claims, thereby supporting the amendment so that Grange can resolve the claims in their entirety.
[2] All capitalized terms used throughout this memorandum have the same meanings as those found in the Settlement Agreement.

on total loss vehicle claims unless the insured replaces the loss vehicle, and provides proof of the sales tax paid, to the insurer within thirty-three days of receiving the insurer's loss settlement payment. *Id.* The Defendant further argued that this case is a dispute over valuation of the vehicle, requiring such dispute to be submitted to appraisal before a lawsuit can proceed. *Id.*

On June 20, 2019, Plaintiff filed her Response in Opposition to the Motion to Dismiss, arguing that Sales Tax and Title, Transfer, and Service Fees are required, and since Defendant did not exclude sales taxes and fees from coverage, they must be considered covered because the policy covers costs an insured is reasonably likely to incur in replacing a vehicle after a covered loss. (Doc. 12). Plaintiff further argued that appraisal is improper because she challenged the scope of coverage not the valuation of the vehicle. *Id.* After the Motion to Dismiss was fully briefed, the Parties submitted various notices of supplemental authority in support of their respective positions. (Docs. 16; 17; 21).

On January 13, 2020, this Court entered an order denying the Motion to Dismiss or Compel Appraisal. (Doc. 24). On February 6, 2020, Defendant filed its Answer and Affirmative Defenses. (Doc. 27). On February 10, 2020, Defendant filed its Notice of Appeal, challenging the dismissal order under 9 U.S.C. §16 as Defendant argued that an order denying appraisal is tantamount to an order denying a motion to compel arbitration. (Doc. 29). Defendant moved to stay the action in this Court pending the appeal, which was granted. (Doc. 30; 32).

The parties then engaged the services of the 6th Circuit Appellate Mediation Program. *See* Joint Declaration of Class Counsel ("Decl."), attached as ***Exhibit B***, ¶ 8. Prior to mediation, Defendant provided data to Plaintiff that showed some insureds were paid Sales Tax and Title, Transfer, and Service Fees on their total loss claims. Decl. ¶ 10-11. However, due to the length of the Class Period, and changes to Grange's systems, the data was incomplete. Plaintiff retained an expert who analyzed the data to estimate the value of Plaintiff's classwide claims and determine whether insureds were paid Sales Tax and Title, Transfer, and Service Fees with a high degree of accuracy such that Grange is confident any insured who submits a Claim Form can be verified. Decl. ¶ 11.

On April 30, 2020, the Parties mediated the Action with Mediator Rod McFaull. Decl. ¶12. The case did not settle that day, but the Parties scheduled and participated in a follow up mediation

session on June 9, 2020. *Id.* Negotiations continued for several weeks and the Parties finally agreed to material settlement terms on July 2, 2020. *Id.* The Parties then advised the Sixth Circuit Court of Appeals of the Settlement to allow this Court to rule upon the Settlement. 6th Cir. Case 20-3177 (Doc. 24). On July 22, 2020, the Parties finalized the Agreement. *Id.*

**B. <u>Summary of the Settlement Terms.</u>**

**1. The Settlement Class.**

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) class, which includes:

> All Grange insureds who submitted a Covered Total Loss Claim and who received a Total Loss Claim Payment from Grange that did not include Sales Tax and/or Title, Transfer, and Service Fees, and who was not subsequently paid Sales Tax and/or Title, Transfer and Service Fees during the Class Period. Excluded from the Settlement Class is Grange, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members. Agreement at ¶ 47.

Class Period means:

> For Settlement Class member Covered Total Loss Claims insured by Grange Indemnity Insurance Company, the period from March 27, 2004, through July 22, 2020; and for Settlement Class Member total loss claims insured by Grange Insurance Company (formerly known as Grange Mutual Insurance Company), Grange Property and Casualty, and Trustgard Insurance Company, the period from June 9, 2005, through July 22, 2020. Agreement at ¶ 22.

**2. Relief for the Benefit of the Settlement Class.**

**a. Cash Settlement Benefits & Settlement Administration Costs**

The Settlement consists of an agreement to pay Settlement Class Members who timely submit a Claim Form 100% of their claimed losses related to Sales Tax, and Title, Transfer and Service Fees. Decl. ¶26. The maximum payout will be $12,667,804.00. Agreement at ¶¶ 15, 55a. Grange will also separately pay: (a) all Settlement Administration costs related to notice and administration; and (b) any Court-awarded Class Counsel Fees or Service Award for the Class Representative. *Id.* at ¶55(b)-(d).

Settlement Class Members shall receive a payment of Sales Tax on the Actual Cash Value of their total loss vehicle at the Ohio average sales tax rate of 7.1%. Title, Transfer, and Service Fees shall be paid in accordance with the schedule in the Agreement, ranging from a total of $9.50 to $21.25,

dependent upon the date of the Settlement Class Member's total loss and the Title, Transfer, and Service fees in effect in Ohio at that time. Agreement at ¶ 79. Because each Settlement Class Member Payment depends on the ACV of their specific vehicle, each Settlement Class Member's recovery will be different. Decl. ¶ 17. Notwithstanding, each Settlement Class Member who submits a Claim Form will receive 100% of their likely recoverable damages had this case gone to trial. *Id.*

### b.  Practice Change to Claims Handling Procedure

On January 17, 2020, after the Complaint was filed and as a result of the Action, Grange ceased its claims handling practice of paying Sales Tax and Title, Transfer, and Services fees only on a reimbursement basis when affirmatively requested by insureds and after proof of purchase of a replacement vehicle, and began paying those costs without requiring replacement of the loss vehicle. *Id.* ¶ 30. These practice changes eliminate the conduct challenged in this Action and are a significant benefit to Settlement Class members and future Grange customers who will now automatically receive their reimbursement payments. These changes will ultimately result in millions of dollars for consumers who, without this Action, may not ever have been reimbursed for their losses. *Id.*

### 3.  Releases.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Grange from claims relating to the subject matter of the Action. The Releases are set forth in Section XI of the Agreement.

### 4.  The Notice Program and Settlement Administrator.

As outlined below, the proposed Notice and Notice Program will be sufficient for all persons so entitled, and satisfy all applicable requirements of law, including Rule 23 and Constitutional Due Process. Decl. ¶¶ 18, 41, 42. All costs associated with Notice and the Settlement Administrator shall be paid by Grange. Agreement at ¶ 55.b.

The Parties have selected and recommend JND Legal Administration as the Settlement Administrator to handle the Notice Program and all aspects of Settlement administration, including the claims process. *Id.* at ¶ 45. JND Legal Administration is one of the leading notice administration firms in the United States. Decl. ¶ 19 The Settlement Administrator will: (i) obtain and verify contact

information for Settlement Class members; (ii) establish and maintain a post office box for exclusion requests, an automated toll-free telephone line and Settlement Website for Settlement related inquiries; (iii) handle any mailed Settlement Class member inquiries; (iv) process and report requests for exclusion and objections; (v) process Claim Forms; (vi) transmit Settlement Class Member Payments; and (vii) make secondary distribution or *cy pres* payments, if applicable. Agreement at ¶¶ 59-60.

The Settlement Administrator will oversee the Notice Program, which is designed to provide the best notice practicable and is tailored to take advantage of the information Grange has available about the Settlement Class. Decl. ¶ 20. Grange will make available to Class Counsel and the Settlement Administrator the Class Data which will include the list of Settlement Class members and all relevant information of a Covered Total Loss Claim used to determine the amount to pay each Settlement Class Member and to identify the information to which Notice will be sent. Agreement at ¶ 58

The Notice Program is reasonably calculated to apprise Settlement Class of: the material Settlement terms; a date by which Settlement Class members may exclude themselves from the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the manner in which to submit a Claim Form to receive their share of the Cash Settlement Benefits; the Final Approval Hearing date; and the Settlement Website address where the Settlement Class may access the Agreement, online Claim Form, and other related documents. Agreement at ¶¶ 61-63.

Notice shall be provided to Settlement Class members in four different ways: (a) Initial Postcard Notice with tear-off Claim Form for return to the Settlement Administrator, along with a second reminder postcard notice ("Reminder Notice") (Initial Postcard Notice and Reminder Notice are collectively "Postcard Notice"); (b) Long Form Notice with greater detail than the Postcard Notice which is available upon request to the Settlement Administrator or on the Settlement Website; (c) Publication Notice; and (d) Web Notice. Agreement at ¶ 65.  The Initial Postcard Notice, Reminder Notice and Long Form Notices are attached as **Exhibits C-E**, respectively.

The Notices will inform Settlement Class members that opt-outs must be postmarked no later than the last day of the Opt-Out Deadline. Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the Agreement, once approved by the Court. *Id.* at ¶ 62.

Further, it shall indicate that any objections to the Settlement must be submitted by Settlement Class Members no later than the Objection Deadline. *Id.* at ¶ 63. A valid objection must include: (a) the name of the Action; (b) the objector's full name, address and telephone number; (c) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (d) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (e) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application; (f) the number of times in which objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that objector filed the objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (g) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (h) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (i) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (j) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (k) the objector's signature (an attorney's signature is not sufficient). *Id.* at ¶ 64.

Notices shall advise Settlement Class members that they must update their addresses with the Settlement Administrator in the event that they change addresses between the date they submit a Claim and 60 days following the Effective Date. *Id.* at ¶65.

The Settlement Administrator shall run the mailing addresses provided by Grange through the National Change of Address Database and shall, within 21 days of Preliminary Approval, mail to all

6

such Settlement Class members the Initial Postcard Notice. Agreement at ¶ 67. The Settlement Administrator shall perform reasonable address traces for Initial Postcard Notices that are returned as undeliverable. *Id.* at ¶ 68. By way of example, a "reasonable" tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. *Id.* The Reminder Notice shall be sent 21 days after the Initial Postcard Notice is sent to Settlement Class members reminding them of the Settlement and the Claims Deadline. *Id.* No later than 60 days before the Final Approval Hearing, the Settlement Administrator shall complete the Notice Re-Mailing Process, which means re-mailing of the Initial Postcard Notice to those Settlement Class members whose new addresses were identified as of that time through address traces. *Id.*

The Settlement Administrator shall publish the Publication Notice of the Settlement in 1/8 page advertisements in the following newspapers covering the major areas in Ohio: Cleveland Plain Dealer, Columbus Dispatch, Cincinnati Inquirer, and Toledo Blade. *Id.*

The Settlement Website shall be established and live no later than 10 days after Preliminary Approval. Publication Notice shall be completed within 14 days of Preliminary Approval. *Id.* at ¶ 68.

The Settlement Administrator shall provide notice through Internet banner advertisements. That Web Notice shall direct the Settlement Class to the Settlement Website where they may review the Long Form Notice and download and submit a Claim Form. Web Notice shall commence within 14 days of Preliminary Approval and continue until the Opt-Out and Objection Deadline. *Id.* at ¶ 69.

Within 14 days of Preliminary Approval, the Settlement Administrator shall establish a toll-free number whereby Settlement Class members may call and hear automated responses to general questions or request a copy of the Long Form Notice to be sent by mail. *Id.* at ¶ 71.

Upon request by Class Counsel or Grange's counsel, the Settlement Administrator shall deliver a declaration confirming that the Notice was effectuated pursuant to the terms of this Settlement. *Id.* at ¶ 70. The Notice Program shall be completed no later than 60 days before the Final Approval Hearing. *Id.* at ¶ 72.

**5. The Claims Process**

To receive a Settlement Class Member Payment, Settlement Class members must submit

Claim Forms by the Claim Deadline. Agreement ¶ 77. The Claim Form Submission Process is simple and easy to understand. Decl ¶22. A Claim Form is included with the Initial Mailed Notice or may be found online. *Id*. Each known Settlement Class member for whom Grange has a mailing address will receive a Claim Form included in their Initial Postcard Notice. Agreement ¶ 77. To be eligible for the Settlement Class Member Payment, each Settlement Class Member submitting a Claim Form by mail shall be required to sign a paper Claim Form and dispatch it in the mail with a postmark by the Claim Deadline. *Id*. Thereafter, upon receipt, the Settlement Administrator will evaluate the Claim Form to make sure it was timely received and signed. *Id*. Settlement Class Members may alternatively submit Claim Forms online at www.ohioautolosstaxsettlement.com. *Id*. The Settlement Website will include a button to "Submit a Claim" which will allow Settlement Class members to upload claims forms online. *Id*. Electronic Claim Forms must be submitted by the Claim Deadline and Settlement Class members will be asked to verify their identity online. Settlement Class members who submit valid and timely Claim Forms shall be entitled to Settlement Class Member Payments in the full amount of the Sales Tax and Title, Transfer, and Service Fees they are owed. *Id*. There will be no deductions prior to distribution. *Id*. Only one Claim Form may be submitted per total loss. *Id*. Any uncashed or undeliverable checks remaining after 120 days after final issuance shall be paid to a *cy pres* recipient subject to agreement of the parties and approval of the Court. *Id*. at ¶84.

> **6. Class Representative's Service Award.**

Class Counsel will seek a Service Award of $5,000.00 for Plaintiff in addition to the Settlement Class Member Payment that Plaintiff will receive. Agreement at ¶ 90. The award will compensate Plaintiff for her time, effort and risk assumed in prosecuting the Action. Decl. ¶ 25. Specifically, she assisted Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to Class Counsel interviews; (2) forwarding documents and information to Class Counsel; (3) assisting Class Counsel in drafting and review of the Complaint; and (4) keeping apprised of the case and conferring with Class Counsel. *Id*. In so doing, the Plaintiff was integral to the case. *Id*.

> **7. Attorneys' Fees and Costs.**

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs.

Pursuant to the Settlement, Class Counsel are entitled to request and Grange will not oppose, a fee of up to $2,533,561.00. Agreement at ¶ 88. The fees, paid by Grange separately from the Cash Settlement Benefits, will not reduce the amounts to paid to Settlement Class Members, and are equal to 20% of the maximum Cash Settlement Benefits. *Id.* Paying Class Counsel Fees apart from the Cash Settlement Benefits ensures that the Settlement Class Members receive 100% of their claimed losses. Decl.  ¶ 24. The Parties negotiated and reached an agreement regarding fees only after agreeing on all material terms of the Settlement. *Id.* Such award is subject to this Court's approval and will serve to compensate Class Counsel for the time, risk and expense counsel incurred pursuing the claims herein. *Id.* Class Counsel will not seek reimbursement for their costs advanced in connection with the Action. *Id.* ¶ 23.

   **8.  Settlement Termination.**

   Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court. Agreement at ¶ 92.b.-d. Grange also may terminate the Settlement if the number of Settlement Class members who opt-out equals or exceeds the number or percentage specified in the separate letter executed by Class Counsel and Grange. *Id.* at ¶ 93. The number or percentage shall be confidential except to the Court upon request for in camera review. *Id.*

**III. <u>ARGUMENT</u>**

   **A.  The Legal Standard for Preliminary Approval.**

   Courts have emphasized the "[t]he law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). Class settlement approval proceeds in three stages: (1) preliminary approval of the proposed settlement; (2) notice to the proposed settlement class members; and (3) a final approval hearing to determine whether the proposed settlement is fair, reasonable and adequate. *In re Teletronics Pacing Systems, Inc.*, 137 F. Supp. 2d. 985, 1026 (S.D. Ohio 2001); *see also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

   Courts grant preliminary approval "where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." Rubenstein, Newberg on Class Actions § 13:10

(5th ed. 2015) (citation omitted); *see also Bowling v. Pfizer*, 144 F. Supp. 3d 945, 952 (S.D. Ohio 2015). "[A] multitude of factors [ ] might enter into the Court's preliminary analysis of whether the terms of the proposed settlement agreement are fair, reasonable, adequate, and in the public interest." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 381 (N.D. Ohio 2001); *see also In re Telectronics*, 137 F. Supp. 2d. at 1009.[3] At this stage, however, the Settlement should be approved so long as "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval . . ." *Id. at* 1015-16.

**B.  This Settlement Satisfies the Criteria for Preliminary Approval.**

The relevant factors weigh in favor of Preliminary Approval here. First, the Settlement was reached with no collusion and is the product of good faith, informed and arm's length negotiations by competent counsel. Furthermore, a review of the fairness, adequacy and reasonableness factors demonstrates that the Settlement warrants Preliminary Approval.

Any settlement requires balancing the claims' merits and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes her claims are meritorious and that she would prevail if she went to trial. However, Grange argue they are unfounded, denies liability, and disputes Plaintiff's ability to certify a class.  Up to the point of settlement, it was willing to vigorously litigate, going so far as to appeal the Court's preliminary ruling on appraisal to the Sixth Circuit. The Parties concluded the settlement benefits outweigh the risks and uncertainties of continued litigation, as well as the time and expenses associated with interlocutory appellate review, contested class certification, possible second interlocutory appellate review of the class certification ruling, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Decl. ¶¶ 26, 27, 31.

1.  *This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations.*

Procedural fairness examines the negotiating process leading to the settlement. *See Priddy v.*

---

[3] Courts consider "many of the same factors" that would be relevant at *final* approval, "though with somewhat less scrutiny." Rubenstein, Newberg on Class Actions § 13:15 (5th ed. 2015).

*Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) (court is required to examine the settlement terms and the settlement process "to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion."); Rubenstein, Newberg on Class Actions § 13:14 (5th ed. 2015) (same). "[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached "[a]fter almost six months of concerted negotiations"). That is true here. Experienced attorneys familiar with the legal and factual issues represented the Parties and negotiated with the assistance of a well-respected Sixth Circuit mediator. Decl. ¶¶ 33-35, and exhibits thereto.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class actions cases. *Id.* ¶ 4. In negotiating this Settlement, Class Counsel had the benefit of years of experience and familiarity with the facts, as well as with other cases involving similar claims. *Id.* ¶¶ 4, 7. Furthermore, Class Counsel thoroughly investigated and analyzed Plaintiff's claims and engaged in motion practice, extensive data analysis, and negotiation. Class Counsel retained a data expert to analyze Grange's class-wide data to determine the potential scope of damages. *Id.* ¶ 10-11. They were thus able to accurately evaluate the strengths and weaknesses and value of the case, ultimately obtaining Grange's agreement to pay Settlement Class Members 100% of their damages. *Id.*

2. *The Facts Support a Preliminary Determination That the Settlement Is Fair, Adequate and Reasonable.*

A preliminary review of the Settlement supports Preliminary Approval under Rule 23(e)(2). The Sixth Circuit has identified seven factors to consider in determining the Settlement's fairness:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631. Courts consider "many of the same factors" that would be relevant at *final* approval, "though with somewhat less scrutiny." Rubenstein, Newberg on Class Actions § 13:15 (5th ed. 2015). They are considered a "useful guide" at the preliminary approval stage.  The *UAW* factors remain applicable even after the 2018 amendment of Rule 23(e). *Doe v. Ohio*, No. 2:91-cv-00464, 2020

U.S. Dist. LEXIS 24826, at *11 (S.D. Ohio Feb. 12, 2020) (finding that the 2018 amendment to Rule 23(e) was not intended to 'displace' the factors developed by the Circuit Courts) (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment)).

These factors must all be considered as a whole to determine whether a proposed settlement is fair, adequate, and reasonable. *Bowling*, 143 F.R.D. at 151; *Thompson v. Midwest Foundation Independent Physicians Asso.*, 124 F.R.D. 154, 157 (S.D. Ohio Dec. 4, 1988) ("A class action settlement cannot be measured precisely against any particular set of factors, however, and the court may be guided by other factors, the relevancy of which will vary from case to case."). At the preliminary approval stage, only certain of the Sixth Circuit's factors are relevant to the fairness inquiry. *Hainey v. Parrott*, 617 F. Supp. 2d. 668, 673 (S.D. Ohio 2007); *see also Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551, at *15-*17 (N.D. Ohio Nov. 7, 2007) (at preliminary approval, analyzing the strength of plaintiffs' case, the risk, expense, complexity, and likely duration of litigation, the amount offered in settlement, and the experience and views of counsel).

    a.  <u>The settlement falls within the range of reasonableness and provides substantial benefits to the class, in light of the likelihood of success on the merits</u>

Courts recognize that settlements by their inherent nature often result in Class Members receiving less than the full potential value of their claims. *See Williams*, 720 F.2d at 922-23 ("Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class."); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) ("[T]he Court may not withhold approval simply because the benefits accrued from the agreement are not what a successful plaintiff would have received in a fully litigated case." (internal quotation marks and alterations omitted)). This factor simply highlights the outstanding result Class Counsel achieved for the Settlement Class. Settlement Class Members who submit a Claim Form will receive 100% of their likely recoverable damages had this case gone to trial. Furthermore, Class Counsel's fee will not reduce the amount each Settlement Class Member will receive.

Plaintiff alleges Grange systematically underpays its auto insurance claimants by excluding Sales Tax and Title, Transfer, and Service Fees from the payment after declareing the vehicle a total

loss and purports to pay the ACV. The Settlement achieves Plaintiff's desired goal of compensating Grange insureds for their underpaid Sales Tax and Title, Transfer, and Service Fees during the Class Period. There was a substantial risk Plaintiff would not achieve such a result. Before Settlement, Grange unsuccessfully sought dismissal or to compel this case to appraisal. Although this Court denied Grange's motion, Grange was in the process of appealing the denial of appraisal to the Sixth Circuit.

Even if Plaintiff prevailed before the Sixth Circuit on the appraisal issue, she would need to go through discovery, class certification, a potential interlocutory appeal of a class certification, dispositive motion practice, trial, and a potential post-trial appeal. While Plaintiff prevailed at the motion to dismiss stage, other courts have ruled against Plaintiff's position, applying other states' laws. *See e.g.*, *Sigler v. Geico Cas. Co.*, No. 19-2272, 2020 U.S. App. LEXIS 23389, at *1 (7th Cir. July 24, 2020); *Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 338 (5th Cir. 2020); *Coleman v. Garrison Prop. & Cas. Ins. Co.*, No. 19 C 1745, 2020 U.S. Dist. LEXIS 16439, at *1 (N.D. Ill. Jan. 30, 2020); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867, 872 (W.D. Wis. 2019). Thus, although Plaintiff believes she has a strong case on the merits, there is no reason to litigate further and increase the risk of losing, when Grange is offering a settlement that compensates Settlement Class Members 100% of their damages.

Plaintiff and Class Counsel appropriately determined the Settlement outweighs the gamble of continued litigation. Decl. ¶¶ 27, 31; *see Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 781 (N.D. Ohio 2010). This is particularly true at preliminary approval because "the Court, at this juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness review." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 350. Rather, "the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *Id.*; *see also Int'l Union*, 497 F.3d at 631 ("[W]e cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." (internal quotation marks omitted)). This Settlement provides *complete* relief without further risk or delay. Decl. ¶ 27.

Further, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator through two mediation sessions.

These negotiations led the Parties to a Settlement that Class Counsel believes to be fair, reasonable, and in the Settlement Class's best interests. Class Counsel's assessment in this regard is entitled to considerable deference. The $12,667,804.00 maximum in cash Settlement Class Benefits, separate payment of Settlement Administration Costs, Class Counsel's Fees, and a Service Award is fair and reasonable. *Id.* ¶¶ 14, 16.

  b. <u>The settlement suffers from no obvious deficiencies and does not improperly grant preferential treatment to the class representative or segments of the class.</u>

  There is no evidence that the Settlement suffers from "obvious deficiencies, such as unduly preferential treatment to the class representatives or of segments of the class, or excessive compensation for attorneys[.]" *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 352 (citation omitted).[4] As discussed above, this Settlement provides complete relief to the Settlement Class Members and treats all Settlement Class members equally. Settlement Class members are entitled to submit claims that will entitle them to 100% compensation of their potential damages. Because the Settlement distributes proceeds based on the exact amount of each individual Settlement Class Member's claim, they will be treated equitably. *Peck v. Air Evac EMS, Inc.*, No. 5:18-CV-615-DCR-MAS, 2019 U.S. Dist. LEXIS 119011, at *13 (E.D. Ky. June 5, 2019) ("The Court finds that the proposed Settlement treats all Class Members equitably. Although there is great disparity between the amounts some Class Members will receive, these amounts are based on the actual number of unpaid overtime hours each Class Member worked during the relevant time period.").

  While the Settlement provides for a modest Service Award to the Class Representative to compensate her for filing the Action and the time that she dedicated to the prosecution of this Action for the benefit of the Settlement Class, courts recognize that such contribution awards are appropriate and do not grant preferential treatment. *See Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (recognizing appropriateness of incentive awards). And

---

[4] At this preliminary stage, the Court does not have to decide whether the incentive award and attorneys' fees and costs ultimately will be approved, only whether there are "substantial grounds to doubt the preliminary fairness . . . of the proposed settlement agreement." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 352.

the proposed $5,000 Service Award to Plaintiff falls well within the range of awards approved in this Circuit. *See Liberte Capital Grp. v. Capwill*, No. 5:99-cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007) ("Incentive awards, where appropriate, generally range from a few thousand dollars to $85,000"). A Service Award is warranted here given that Plaintiff was essential to Class Counsel's ability to prepare and bring this case. Accordingly, this Settlement does not provide for any preferential treatment to the Class Representative or segments of the Settlement Class.

        c.   The opinions of class counsel favor approval of the settlement.

In assessing the settlement, this Court should also consider the experience of counsel and their views of the settlement. *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"). Here, Class Counsel includes attorneys experienced in consumer class action litigation of this type. Decl. ¶¶ 33, 34. Class Counsel has conducted necessary damages discovery confirming the amount of potential damages. Decl. ¶¶ 7, 9-11. Given the experience of Class Counsel in this matter and in similar matters, their opinions that the terms of this Settlement are fair, adequate, and reasonable should be given substantial weight in approving the Settlement.

        d.   The public interest also merits in favor of approval of the settlement.

"Public policy generally favors settlement of class action lawsuits." *In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:09-WP-65000, 2016 WL 5338012, at *12 (quoting *Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014)). "Settlement in this case 'provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources.'" *Id.* (quoting *Stinson*). "Settlement agreements should [ ] be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Here, in light of the result whereby

15

Settlement Class Members are receiving 100% of their likely recoverable damages at trial, the public interest is well-served by granting Preliminary Approval of the Settlement.

### C.  Certification of the Settlement Class Is Appropriate.

Plaintiff respectfully requests that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1).  Settlement Class certification will allow Notice to issue to Settlement Class members of the Settlement; of their right to be heard on its fairness; of their right to opt-out or object; and of the Final Approval Hearing. *See Manual for Compl. Lit.*, §§ 21.632, 21.633. Grange does not oppose class certification for settlement purposes. Certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

**Numerosity.** The numerosity requirement of Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." *See Daffin v. Ford Motor Co*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement" (internal quotation marks omitted)). Here, numerosity is satisfied because the Settlement Class has thousands of customers and joinder is impracticable. Decl. ¶ 36.

**Commonality.** "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-390 (2011) (citation omitted). For commonality, "there need only be one question common to the class, so long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos. Inc.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014) (internal quotation marks and alteration omitted). Here, Rule 23(a)(2) is readily satisfied by multiple common questions of law and fact—centering on Grange's alleged systematic practice of not paying Sales Tax or Title, Transfer, and Service Fees—that would generate common answers to the claims' viability. Decl. ¶ 37.

16

**Typicality.** For similar reasons, Plaintiff's claims are reasonably coextensive with those of absent Settlement Class members, such that Rule 23(a)(3) is satisfied. Typicality is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)). Typicality is satisfied because Plaintiff was subjected to the same claim handling practices and alleged non-payment of Sales Tax and Title, Transfer, and Services Fees, suffering the same injuries, and she will benefit equally from the Settlement relief. Decl. ¶ 38.

**Adequacy.** Plaintiff and Class Counsel satisfy Rule 23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. Rule 23(a)(4) ensures that the named representatives "will fairly and adequately protect the interests of the class." Adequacy has two components: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (alteration in original)). Plaintiff's interests are coextensive with, not antagonistic to, the Settlement Class's interests. She and the absent Settlement Class members have the same interest in the relief the Settlement affords, and the absent Settlement Class members have no diverging interests. Decl. ¶ 39. Further, Plaintiff is represented by qualified and competent counsel with extensive experience and expertise prosecuting complex class actions, including class actions similar to this one. *Id.* Class Counsel has devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id.*

**Predominance and Superiority.** Certification of the Settlement Class is further appropriate because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). To satisfy predominance, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation

marks omitted). "The fact that a defense may arise or may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* (internal quotation marks omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) ("Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." (internal quotation marks and alterations omitted)). This is readily satisfied. Liability questions common to all Settlement Class members substantially outweigh any possible individual issues. Decl. ¶ 40. For example, each Settlement Class member's relationship with Grange arises from the same or substantially similar insurance policies as the other Settlement Class members' policies, and the total loss claims handling and payment procedures at issue were done the same classwide *Id.* Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### D. The Court Should Approve the Proposed Notice Plan Because It Is Constitutionally Sound.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311.

The proposed Notice Program satisfies due process and Rule 23 as it provides for direct notice through the Mailed Notice and Publication Notice. *See* Fed. R. Civ. P. 23(c)(2); *Frost v. Household Realty Corp.,* 61 F. Supp. 3d. 740, 744 (S.D. Ohio 2004); *Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096,

2014 WL 5162380, at *11 (N.D. Ohio. Oct. 14, 2014) (approving notice where "notice was disseminated via individual mailing to all Class Members identified in the customer data files of [the defendant], and also by publication"). Moreover, the Settlement provides for Web Notice, via Internet banner advertisements, the creation of a Settlement Website, and an automated toll-free telephone line for Settlement Class members to call with inquiries and receive answers to frequently asked questions.

Additionaly, the content of the Notice satisfies due process and Rule 23. *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (approving notice described settlement terms, why the class representatives decided to settle, the settlement's legal effect, and the right to voice objections). Here, it will

> reasonably apprise[ ] the Class Members of the nature and pendency of the Class Action and the class claims; of all material elements of the proposed settlement, including but not limited to the definition of the Settlement Class, the relief available under the proposed settlement and steps necessary to obtain the relief; of the res judicata effect on Class Members and of the right, time and manner to object to the settlement; of the identity of Plaintiffs' and Defendant's Counsel and of information necessary to communicate with Plaintiffs' Counsel; that complete information is available in the Court's files; and of the right to appear at the Fairness Hearing, including through an attorney. Full opportunity has been afforded to Class Members to be heard at and to participate in the Fairness Hearing.

*Koenig v. USA Hockey, Inc.*, 2012 WL 12926023, at *12 (S.D. Ohio 2012). Additionally, the Notice will inform Settlement Class members that they may receive more information on the Settlement website, where they can view and access the Agreement and other court documents. *Id.*

### E. Notice Pursuant to the Class Action Fairness Act.

The Class Action Fairness Act requires settling defendants give notice of a settlement to state and federal officials, supplying all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). Grange will serve the CAFA Notice with a CD containing the required documents.

### F. Plaintiff's Counsel Should Be Appointed Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims;

experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv). As detailed above, Class Counsel diligently investigated and litigated Plaintiff's claims obtaining the maximum potential recovery for the Settlement Class, and have and will continue to devote substantial time and resources. Class Counsel have extensive experience with similar class action litigation and have been appointed class counsel in many class actions. *See* Decl ¶33., Ex. #2-6. Accordingly, the Court should appoint Plaintiff's counsel to serve as Class Counsel.

### G. The Proposed Schedule of Events.

The key Settlement-related dates are based on when Preliminary Approval is granted and the Final Approval Hearing date. The dates are listed below, calculated consistent with the Agreement.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Send Initial Postcard Notice | 21 days after Preliminary Approval |
| Send Reminder Notice | 21 days after Initial Postcard Notice |
| Plaintiff's Motion for Final Approval | 45 days before Final Approval Hearing |
| Opt-Out Deadline | 30 days before Final Approval Hearing |
| Objection Deadline | 30 days before Final Approval Hearing |
| Deadline to Respond to Objections | 10 Days before Final Approval Hearing |
| Final Approval Hearing | Week of December 1, 2020 (or as soon thereafter, as is convenient for the Court) |
| Claims Deadline | 60 days after Effective Date |

## II. <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court: (1) grant Preliminary Approval; (2) authorize the filing of an Amended Complaint; (3) certify the Settlement Class; (4) appoint Plaintiff as Class Representative; (5) approve the Notices in substantially the form as those attached; (6) approve the opt-out and objection procedures; (7) stay the Action pending Final Approval; (8) appoint the firms listed in the signature blocks below as Class Counsel; and (9) schedule a Final Approval Hearing on or shortly after December 1, 2020 (if convenient for the Court). Attached as ***Exhibit F*** is a proposed order for the Court's consideration.

DATED: August 5, 2020.

*/s/ Jeff Ostrow*

**KOPELOWITZ OSTROW, P.A.**
Jeff Ostrow (*pro hac vice*)
Joshua R. Levine (*pro hac vice*)
1 W Las Olas Blvd, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Fax: 954-525-4300
ostrow@kolawyers.com
levine@kolawyers.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (*pro hac vice*)
20900 NE 30th Avenue
Suite 417
Aventura, FL 333180

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq. (*pro hac vice*)
300 S Biscayne Blvd
Suite 2704
Miami, FL 33131

**SPANGENBERG SHIBLEY & LIBER LLP**
Stuart Scott, Esq.
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 33114

**SHAMIS & GENTILE, P.A.**
Andrew Shamis, Esq. (*pro hac vice*)
14 NE 1st Avenue
Suite 1205
Miami, FL 33132

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2020, the foregoing was filed via CM/ECF, which caused a true and correct copy to be served to all counsel of record.

Respectfully submitted,

By: */s/ Jeff Ostrow*
        Jeff Ostrow