UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| VICKI OSTENDORF,<br><br>     Plaintiff,<br><br>  v.<br><br>GRANGE INDEMNITY INSURANCE COMPANY,<br><br>     Defendant. | Judge Algenon L. Marbley<br>Magistrate Judge Kimberly A. Jolson<br><br>Case No.: 2:19-CV-01147-ALM-KAJ |

## PLAINTIFF'S UNOPPOSED MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
## APPLICATION FOR ATTORNEYS' FEES AND SERVICE AWARD

   Plaintiff, Vicki Ostendorf, moves this Court for Final Approval of the class action settlement reached between the Parties and for an award of Attorneys' Fees and a Service Award to the Plaintiff. As set forth in the attached Memorandum in Support, the Parties have reached a classwide settlement and request that this Court grant Final Approval in accordance with Federal Rules of Civil Procedure 23.

DATED: October 16, 2020.

*/s/ Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
Jeff Ostrow (*pro hac vice*)
Jonathan M. Streisfeld (*pro hac vice*)
Joshua R. Levine (*pro hac vice*)
1 W. Las Olas Blvd, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
streisfeld@kolawyers.com
levine@kolawyers.com

**SPANGENBERG SHIBLEY & LIBER LLP**
Stuart Scott
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 33114
sscott@spanglaw.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg (*pro hac vice*)
20900 N.E. 30th Avenue
Suite 417
Aventura, FL 33180
scott@edelsberglaw.com

**DAPEER LAW, P.A.**
Rachel Dapeer (*pro hac vice*)
20900 N.E. 30th Avenue
Suite 417
Aventura, FL 33180
rachel@dapeer.com

**SHAMIS & GENTILE, P.A.**
Andrew Shamis (*pro hac vice*)
14 NE 1st Avenue
Suite 1205
Miami, FL 33132
ashamis@shamisgentile.com

*Counsel for Plaintiff and the Settlement Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VICKI OSTENDORF, on behalf of herself and
all others similarly situated,

              Plaintiff,

    vs.

GRANGE INDEMNITY INSURANCE
COMPANY, an Ohio corporation,

            Defendant.

Judge Algenon L. Marbley
Magistrate Judge Kimberly A. Jolson

Case No.: 2:19-CV-01147-ALM-KAJ

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION
FOR ATTORNEYS' FEES AND SERVICE AWARD**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ........................................................................................................ 2

     A.   Class Counsel's Investigation and Procedural History .......................................... 2

     B.   Summary of the Settlement Terms ......................................................................... 4

         1.   The Settlement Class ........................................................................................ 4

         2.   Relief for the Benefit of the Settlement Class ................................................. 5

             a.   Cash Settlement Benefits & Settlement Administration Costs ......................... 5

             b.   Practice Change to Claims Handling Procedure .................................... 5

         3.   Releases ............................................................................................................ 6

         4.   The Notice Program and Settlement Administrator ...................................... 6

         5.   The Claims Process ......................................................................................... 8

         6.   Class Representative's Service Award .............................................................. 9

         7.   Attorneys' Fees .............................................................................................. 10

III.   ARGUMENT ........................................................................................................... 10

     A.   The Legal Standard for Final Approval ............................................................... 10

Fed. R. Civ. P. 23(e) requires court approval before a class action can be dismissed via a settlement. "In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.'"

*UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007); Fed. R. Civ. P. 23(e)(2).

     B.   This Settlement Satisfies the Criteria for Final Approval ............................................. 11

         1.   This Settlement is the Product of God Faith, Informed and
             Arm's Length Negotiations .......................................................................... 12

Experienced Counsel, familiar with this case and the damages at issue, engaged in informed, arm's length negotiations with a well-respected mediator and proper damages discovery.

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001); *Energy Corp. v. Columbia Gas*

*Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991)

  2. The Facts Support a Final Determination That the Settlement Is
     Fair, Adequate and Reasonable...................................................................13

     a. The Settlement Falls Within the Range of Reasonableness and
        Provides Substantial Benefits to the Class, in Light of the Likelihood
        of Success on the Merits ....................................................................13

Plaintiff and Class Counsel appropriately determined the Settlement outweighs the gamble of continued litigation. Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class. Here, however, Settlement Class Members will receive 100% of their likely recoverable damages had this case gone to trial.

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 781 (N.D. Ohio 2010).

     b. The Settlement Suffers From no Obvious Deficiencies and Does Not
        Improperly Grant Preferential Treatment to the Class Representative or
        Segments of the Class...........................................................................15

This Settlement provides complete relief to the Settlement Class Members and treats all Settlement Class members equally. Settlement Class members are entitled to submit claims that will entitle them to 100% compensation of their potential damages.

*Levitt v. Sw. Airlines Co. (In re Sw. Airlines Voucher Litig.)*, 799 F.3d 701 (7th Cir. 2015); *Peck v. Air Evac EMS, Inc.*, No. 5:18-CV-615-DCR-MAS, 2019 U.S. Dist. LEXIS 119011 (E.D. Ky. June 5, 2019).

     c. The Opinions of Class Counsel Favor Approval of the Settlement ...............16

In assessing the Settlement, this Court should also consider the experience of counsel and their views of the settlement. The question is not whether a claims made settlement compares favorably to a hypothetical settlement, but rather whether the Settlement is fair and reasonable on its own terms.

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010); *Casey v. Citibank*, N.A., 2014 U.S. Dist. LEXIS 156553, at *5 (N.D.N.Y. Aug. 21, 2014).

     d. The Reaction of Absent Class Members Weighs in
        Favor of the Settlement.........................................................................18

The Reaction of the Settlement Class has been overwhelmingly positive. Out of approximately 16,676 Settlement Class members, none have opted-out by the day this Motion was filed, and no objections have been filed.

*Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474 (S.D. Ohio Oct. 17, 2018).

e.   The Public Interest Also Merits in Favor of Approval of the Settlement......18

Public policy generally favors settlement of class action lawsuits. Settlement in this case provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources. Settlement agreements should be upheld whenever equitable and policy considerations so permit.

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at *36 (N.D. Ohio Sep. 23, 2016).

C.   Notice to the Settlement Class Was Adequate and Satisfied Rule 23 and
     Due Process....................................................................................................................19

The Notice Program satisfies due process and Rule 23 as it provided direct notice through the Mailed Notice and Publication Notice as well as Web Notice, via Internet banner advertisements, to further reach Settlement Class members, the creation of a Settlement Website, and an automated toll-free telephone line.

Fed. R. Civ. P. 23(e)(1)(B); *Frost v. Household Realty Corp.,* 61 F. Supp. 3d. 740 (S.D. Ohio 2004); *Vassale v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 WL 5162380 (N.D. Ohio. Oct. 14, 2014).

D.   Certification of the Settlement Class is Appropriate......................................................20

The Settlement Class satisfies all the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

E.   Notice Pursuant to the Class Action Fairness Act .........................................................21

F.   Application for Service Award .......................................................................................22

A Service Award is warranted here given that Plaintiff was essential to Class Counsel's ability to prepare and bring this case and, at $5,000.00, is at the low end of Service Awards that have been held reasonable by Courts in this District.

*Liberte Capital Grp. v. Capwill, No.* 5:99-cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007).

G.   Application for Attorneys' Fees .....................................................................................22

1.   The Standard for Awarding Attorneys' Fees to Class Counsel..............................23

Awards of attorney's fees by federal courts in common fund cases must be reasonable under the circumstances. Nevertheless, the percentage of the fund method is preferred in common fund cases. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved. Fees negotiated and paid separate and apart from the class recovery, as here, are entitled to a presumption of reasonableness. The 20% requested fee is at the low end of the percentages awarded in this Court.

*Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *12 (S.D. Ohio Oct. 3, 2018); *Connectivity Sys. Inc. v.*

*Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *31 (S.D. Ohio Jan. 25, 2011); Cowit v. CitiMortgage, Inc., Civil Action No. 1:12-cv-869, 2015 U.S. Dist. LEXIS 143156, at *19 (S.D. Ohio Oct. 21, 2015); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006).

2.   The Ramey Factors ........................................................................................ 26

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)).

a.   The Value of the Benefits Rendered to the Class .............................. 26

The value of the benefits rendered to the Settlement Class is substantial. Settlement Class Members who submit Claim Forms will receive 100% of their likely recoverable damages.

*Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474 (S.D. Ohio Oct. 17, 2018).

b.   Society's Stake in Rewarding Attorneys Who Produce Such
Benefits in Order to Maintain an Incentive to Others ...................................... 27

There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases. Adequate compensation is necessary to encourage attorneys to assume the risk of litigation in the public interest. Class Counsel's effort resulted in a substantial monetary benefit for the Settlement Class members, many of whom would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant.

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829 (S.D. Ohio Jan. 25, 2011)

c.   Whether the Services Were Undertaken on a Contingent Fee Basis .............. 27

The retention agreement with the Plaintiff is a contingent fee agreement. No payment of attorneys' fees would occur in this case but for a fee award in an individual or class settlement.

d.   The Value of the Services on an Hourly Basis (The Lodestar Crosscheck) ... 28

While this case was settled early on, it was settled at the point of maximum leverage by Plaintiff. This is evidenced by the fact that she secured 100% of the likely recoverable damages for all Settlement Class Members who submit Claim Forms. Given that Class Counsel obtained maximum benefits for the class, this Court should exercise its discretion to simply award a percentage of the fund.

*Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 18838 (S.D. Ohio Feb. 28, 2008).

e.   The Complexity of the Litigation ...................................................... 29

Even if Plaintiff prevailed before the Sixth Circuit on the appraisal issue, she would need to go through full class and merits discovery, class certification, a potential interlocutory appeal of a class certification, dispositive motion practice, trial, and a potential post-trial appeal.

f.   The Professional Skill and Standing of Counsel on Both Sides......................30

Class Counsel are experienced in class action litigation, serving as lead or co-lead counsel in dozens of consumer class actions in federal and state courts throughout the country. Grange is represented the prominent national firm, Baker & Hostetler LLP.

*Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474 (S.D. Ohio Oct. 17, 2018).

IV.   CONCLUSION ........................................................................................................30

## I.  INTRODUCTION

Plaintiff, Vicki Ostendorf, submits this Memorandum of Law in Support of her Unopposed Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Service Award.[1] The Settlement Agreement, attached as *Exhibit A*, if approved, will resolve all claims in this Action against the Grange Defendants, Grange Indemnity Insurance Company, Grange Insurance Company f/k/a Grange Mutual Casualty Company, Grange Property and Casualty, and Trustgard Insurance Company. The Settlement should be finally approved because it provides substantial relief for the Settlement Class and the Settlement terms are reasonable and consistent with Sixth Circuit precedent.

The Settlement – which affords Settlement Class Members the right to recover 100% of their actual losses - is an excellent result in light of the risks inherent in litigating the Action. The Settlement provides that Grange pay: (a) up to $12,667.804.00 in Cash Settlement Benefits to Settlement Class Members; (b) all Settlement Administration Costs; and (c) Class Counsel Fees and Plaintiff's Service Award, as approved by this Court. The Settlement Administration Costs, any Court-awarded Class Counsel Fees, and the Service Award are to be paid separate and apart from the Cash Settlement Benefits that Settlement Class Members will receive. Class Counsel has agreed not to seek reimbursement of its litigation costs from Grange or the Settlement Class. Additionally, as a result of the Action, Grange now pays its insureds the very taxes and fees complained about in the Action, which will equate to millions of reimbursements to Grange's insureds.

One of the keystones of the Settlement is that Settlement Class Members will recover 100% of their likely recoverable damages immediately without the risk and delay of further litigation. The Claims Process and allocation plan fairly and adequately account for the available information about the Settlement Class Members' insurance claims and the value of their individual damages. Class Counsel is seeking attorneys' fees in an amount equal to 20% of the Cash Settlement Benefits and a

---

[1] All capitalized terms in this memorandum shall have the same meanings as those defined in the Settlement Agreement.

$5,000.00 Service Award for Plaintiff, each to be paid separately by Grange.

Following Preliminary Approval of the Settlement on September 8, 2020, the Settlement Administrator properly completed the Court-approved Notice Program. To date, no Settlement Class Member has objected to the Settlement, Plaintiff's request for Class Counsel Fees or the Service Award, and no Settlement Class members have opted-out of the Settlement. The absence of objections and opt-outs to date are evidence that the Settlement Class supports approval of the Settlement and that it warrants Final Approval. Before the Final Approval Hearing, the Settlement Administrator will file a supplemental declaration updating the Court regarding the Claim Form submission process and the number of opt-outs or objections, if any.

In support of the Motion, Plaintiff submits a Joint Declaration from Class Counsel Jeff Ostrow, Scott Edelsberg, Andrew Shamis, and Rachel Dapeer ("Joint Decl."), attached as **Exhibit B**, and a Declaration from Settlement Administrator Jennifer Keough ("Admin. Decl."), attached as **Exhibit C**. Therefore, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(3); (3) appoint Plaintiff Vikki Ostendorf as Class Representative; (4) appoint Kopelowitz Ostrow P.A., Spangenberg Shibley & Liber LLP, Shamis & Gentile, P.A., Edelsberg Law, P.A., and Dapeer Law, P.A., as Class Counsel; (5) grant Class Counsel's Application for Attorneys' Fees and Service Award; and (6) enter Final Judgment dismissing the Action with prejudice.

## II. BACKGROUND

### A. Class Counsel's Investigation and Procedural History

On March 27, 2019, Plaintiff filed this putative class action alleging that Grange systematically underpays its insureds on Covered Total Loss Claims by excluding Sales Tax and Title, Transfer, and Service Fees from the payment it makes when it declares the vehicle a total loss and purports to pay the actual cash value, commonly known as ACV. (ECF No. 1). On May 30, 2019, Defendant filed a Motion to Dismiss or, in the Alternative, Stay and Compel Appraisal. (ECF No. 7). In the Motion to Dismiss, Defendant argued (a) Sales Tax and Title, Transfer, and Service Fees are not included under

2

ACV under the policy definitions; and (b) Ohio law expressly provides that insurers need not pay sales tax on total loss vehicle claims unless the insured replaces the loss vehicle, and provides proof of the sales tax paid to the insurer within thirty-three days of receiving the insurer's loss settlement payment. *Id.* The Defendant further argued that this case is a dispute over valuation of the total loss vehicle, requiring such dispute to be submitted to appraisal before a lawsuit can proceed. *Id.*

On June 20, 2019, Plaintiff filed her Response in Opposition to the Motion to Dismiss, arguing that Sales Tax and Title, Transfer, and Service Fees are required, and since Defendant did not exclude sales taxes and fees from coverage, they must be considered covered because the policy covers costs an insured is reasonably likely to incur in replacing a vehicle after a covered loss. (ECF No. 12). Plaintiff further argued that appraisal is inapplicable because she challenged the scope of coverage not the valuation of the vehicle. *Id.* After the Motion to Dismiss was fully briefed, the Parties submitted various notices of supplemental authority in support of their positions. (ECF Nos. 16; 17; 21).

On January 13, 2020, this Court entered an order denying the Motion to Dismiss or Compel Appraisal. (ECF No. 24). On February 6, 2020, Defendant filed its Answer and Affirmative Defenses. (ECF No. 27). On February 10, 2020, Defendant filed its Notice of Appeal, challenging the order denying its motion under 9 U.S.C. §16 and arguing that an order denying appraisal is tantamount to an order denying a motion to compel arbitration. (ECF No. 29). Defendant moved to stay the action in this Court pending the appeal, which was granted. (ECF Nos. 30; 32).

The Parties then engaged the services of the Sixth Circuit Appellate Mediation Program. *See* Joint Decl. ¶ 8. Prior to mediation, Defendant provided data to Plaintiff that showed some insureds were paid Sales Tax and Title, Transfer, and Service Fees on their total loss claims. Joint Decl. ¶ 11. However, due to the length of the Class Period, and changes to Grange's systems, the data was incomplete. *Id.* Plaintiff retained an expert who analyzed the available data to estimate the value of Plaintiff's classwide claims and determine whether insureds were paid Sales Tax and Title, Transfer, and Service Fees with a high degree of accuracy. Grange is confident any insured who submits a Claim Form can be verified by cross-referencing claims files where necessary. *Id.* ¶ 11.

On April 30, 2020, the Parties mediated the Action with Sixth Circuit Mediator Rod McFaull.

3

*Id.* ¶ 12. The case did not settle that day, but the Parties scheduled and participated in a follow up mediation session on June 9, 2020. *Id.* Negotiations continued for several weeks, and the Parties finally agreed to material settlement terms on July 2, 2020. *Id.* The Parties then advised the Sixth Circuit Court of Appeals of the Settlement to allow this Court to rule upon the Settlement. (6th Cir. Case 20-3177 (ECF No. 24)). On July 22, 2020, the Parties finalized the Agreement. *Id.*

On August 5, 2020, the Parties filed a Joint Motion to Lift Stay for the limited purpose of effectuating the Settlement (ECF No. 37). On the same day, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Action Settlement and supporting memorandum. (ECF No. 38). In addition to seeking Preliminary Approval of the Settlement, the Motion for Preliminary Approval sought leave to add the other Grange entities to the Action for the purpose of effectuating the Settlement. *Id.* On September 8, 2020, this Court granted the Motion for Preliminary Approval and ordered the filing of the Amended Complaint and for Plaintiff to proceed with the Notice Program. (ECF No. 40). On September 9, 2020, Plaintiff filed the Amended Complaint. (ECF No. 41). On September 21, 2020, the Parties filed a Stipulated Motion to Stay seeking to stay a response to the Amended Complaint pending Final Approval of the Settlement, (ECF No. 42), which was granted by this Court on September 22, 2020. (ECF No. 43.)

**B.  Summary of the Settlement Terms.**

**1.  The Settlement Class.**

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) class, which includes:

> All Grange insureds who submitted a Covered Total Loss Claim and who received a Total Loss Claim Payment from Grange that did not include Sales Tax and/or Title, Transfer, and Service Fees, and who was not subsequently paid Sales Tax and/or Title, Transfer and Service Fees during the Class Period. Excluded from the Settlement Class is Grange, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

Agreement at ¶ 47.

Class Period means:

> For Settlement Class member Covered Total Loss Claims insured by Grange Indemnity Insurance Company, the period from March 27, 2004, through July 22, 2020; and for Settlement Class Member total loss claims insured by Grange Insurance

4

Company (formerly known as Grange Mutual Insurance Company), Grange Property and Casualty, and Trustgard Insurance Company, the period from June 9, 2005, through July 22, 2020.

*Id.* at ¶ 22.

### 2. Relief for the Benefit of the Settlement Class.

#### a. Cash Settlement Benefits & Settlement Administration Costs

Settlement Class Members who timely submit Claim Forms will receive 100% of their likely recoverable damages. Joint Decl. ¶ 14. The maximum payout for all Settlement Class Members will be $12,667,804.00. Agreement at ¶¶ 15, 55a. Grange will also separately pay: (a) all Settlement Administration Costs (estimated to be $70,000.00); and (b) any Court-awarded Class Counsel Fees and Service Award for the Class Representative. *Id.* at ¶55(b)-(d).

Settlement Class Members shall receive a payment of Sales Tax on the ACV of their total loss vehicle at the Ohio average sales tax rate of 7.1%. Title, Transfer, and Service Fees shall be paid in accordance with the schedule in the Agreement, ranging from a total of $9.50 to $21.25, dependent upon the date of the Settlement Class Member's total loss and the Title, Transfer, and Service Fees in effect in Ohio at that time. *Id.* at ¶ 79. Because each Settlement Class Member Payment depends on the ACV of their specific vehicle, each Settlement Class Member's recovery will be different. Joint Decl. ¶ 17. Notwithstanding, all Settlement Class Members who submit a Claim Form will receive 100% of their likely recoverable damages had this case gone to trial. *Id.* With a Cash Settlement Benefit of $12,667,804.00, and approximately 16,676 Settlement Class members, the average Settlement Class Member Payment will be $759.64. This Settlement is providing real and substantial benefits to the Settlement Class.

#### b. Practice Change to Claims Handling Procedure

On January 17, 2020, after the Complaint was filed and as a direct result of the Action, Grange now pays the taxes and fees at issue in this Action automatically. *Id.* ¶ 30. This practice change eliminates the very conduct challenged in this Action and is a significant benefit to Settlement Class members and future Grange customers who will now automatically receive their reimbursement payments. *Id.* Like the damages recovered for Settlement Class Members here, these changes will result in millions of

dollars in savings for consumers who, without this Action, may not ever have been reimbursed for their losses. *Id.*

    **3. Releases.**

    In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Grange from claims relating to the subject matter of the Action. The Releases are set forth in Section XI of the Agreement.

    **4. The Notice Program and Settlement Administrator.**

    As discussed herein and in Section III.C. below, the Notice and Notice Program is sufficient for all persons so entitled, and satisfy all applicable requirements of law, including Rule 23 and constitutional due process. Joint Decl. ¶ 18; Admin. Decl. ¶¶ 17-18. All costs associated with the Notice Program and the Settlement Administrator have been and will continued to be paid by separately by Grange. Agreement at ¶ 55.b.

    The Notice Program was completed in accordance with this Court's instructions in the Preliminary Approval Order. Joint Decl. ¶ 20. The Court approved JND Legal Administration as the Settlement Administrator to handle the Notice Program and all aspects of Settlement administration, including the Claims Form Submission Process. *Id.* at ¶ 19. Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator is overseeing the Notice Program, which consisted of (i) obtaining and verifying contact information for Settlement Class members; (ii) establishing and maintaining a post office box for exclusion requests, an automated toll-free telephone line and Settlement Website for Settlement related inquiries; (iii) handling any mailed Settlement Class member inquiries; (iv) processing and reporting requests for exclusion and objections; (v) processing Claim Forms; (vi) transmitting Settlement Class Member Payments; and (vii) making secondary distribution or *cy pres* payments, if applicable. Agreement at ¶¶ 59-60; Admin. Decl. *passim.*

    The Notice Program was designed to and has provided the best notice practicable and took advantage of the information Grange has available about the Settlement Class. Admin Decl. ¶ 18; Joint Decl. ¶ 20. Grange made available to Class Counsel and the Settlement Administrator the Class Data which included the list of Settlement Class members and all relevant information of a Covered Total

Loss Claim, which was used to identify where Notice was to be sent, and will be used to determine the amount to pay each Settlement Class Member who submits a Claim Form. Agreement at ¶ 58; Admin. Decl. ¶ 4. Notice was provided to Settlement Class members in four different ways: (a) Initial Postcard Notice with tear-off Claim Form for return to the Settlement Administrator, along with a second reminder postcard notice ("Postcard Notice"); (b) Long Form Notice with greater detail than the Postcard Notice which is available upon request to the Settlement Administrator or on the Settlement Website; (c) Publication Notice; and (d) Web Notice. Agreement at ¶ 65; Admin. Decl. ¶¶ 7-14.

On August 7, 2020, the Settlement Administrator received a spreadsheet containing 16,770 line items comprising of names, addresses, and claim information for individuals and entities identified by Grange as Settlement Class members. Admin. Decl. ¶ 4. The Class Data was promptly loaded into a database established for this Action, and the Settlement Administrator certified the mailing data via the Coding Accuracy Support System in order to ensure the consistency of the contact information in the database. *Id.* Prior to mailing notices, the Settlement Administrator verified the mailing addresses through the National Change of Address database and identified updated addresses. *Id.* ¶ 5.

On September 29, 2020, the Settlement Administrator caused the Initial Postcard Notice to be mailed via first-class regular mail using the United States Postal Service. *Id.* ¶ 7. After updating addresses for postcards returned undeliverable and remailing the undeliverables, there was a 99.72% delivery rate to the Settlement Class members. *Id.* ¶ 9.

September 23, 2020, the Settlement Administrator complied with the Publication Notice requirements by placing advertisements in the *Cincinnati Enquirer*, the *Cleveland Plain Dealer*, the *Columbus Dispatch*, and the *Toledo Blade*. *Id.* ¶10. September 22, 2020, the Settlement Administrator complied with the digital media requirement by placing banner advertisements via Google Display Network and advertisements displayed on Facebook, targeting an audience of general car repair in Ohio. *Id.* ¶11. As of October 14, 2020, the banner advertisements had delivered 6,453,597 impressions and the Facebook advertisements had delivered 819,049 impressions. *Id.* ¶12.

On September 18, 2020, the Settlement Administrator established the Settlement Website

(*www.ohioautolosstaxsettlement.com*), which remains active and contains summary information about the Settlement, the Claim Form Submission Process, copies of important case documents, answers to frequently asked questions, and provides mail and e-mail contact for the Administrator. *Id.* ¶13. The website also allows users to submit a Claim Form electronically. *Id.* As of October 14, 2020, the Settlement website has tracked 1,597 unique visitors and 4,134 page views. *Id.* ¶14. In addition to the website, the Settlement Administrator established a case-specific toll-free number (877-313-0201) with an Interactive Voice Response (IVR) which individuals may call to obtain information regarding the Settlement. *Id.* ¶15. The line is available 24 hours a day, seven days a week. *Id.* As of October 14, 2020, the toll-free number has received 40 calls. *Id.* ¶ 16.

The Notice Program was reasonably calculated to and did apprise Settlement Class members of the following: a description of the material Settlement terms; a date by which Settlement Class members may exclude themselves from the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the Final Approval Hearing date; and the Settlement Website address where the Settlement Class may access the Agreement and other related documents. Joint Decl. ¶ 18. The Notice Program was designed to and did provide the best notice practicable and was tailored to take advantage of the information Grange had available about the Settlement Class. Joint Decl. ¶ 20; Admin. Decl. ¶ 18. The Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law, including Rule 23 and constitutional due process. Admin. Decl. ¶ 17-18.

### 5. The Claims Process

To receive a Settlement Class Member Payment, Settlement Class Members must submit Claim Forms by the Claim Deadline. Agreement ¶ 77; Joint Decl. ¶21. The Claim Form Submission Process is appropriate because although the Class Data is sufficient to allow the Parties to determine who may be in the Settlement Class for purposes of calculating the maximum Cash Settlement Benefits and for ensuring Notice is delivered to all potential Settlement Class members, there are gaps in the data that require a manual cross-check of the individual claims files to ensure that payments were not previously made. Joint Decl. ¶ 11. The Claim Form Submission Process is simple and easy to

8

understand. Joint Decl. ¶ 22. Settlement Class members received a Claim Form included in their Initial Postcard Notice, which included instructions to submit a hard copy in the mail or online on the Settlement Website. Agreement ¶ 77; Admin. Decl. Ex. B. All that is required for a Settlement Class Member to submit a Claim Form is to submit a hard copy in the mail or online on the Settlement Website by the Claim Deadline. Agreement ¶ 77. The Settlement Website includes a button to "Submit a Claim" allowing Settlement Class Members to easily submit Claim Forms online. *Id.*

Upon receipt of Claim Forms, the Settlement Administrator will evaluate the Claim Form to make sure it was timely received and signed. *Id.* Settlement Class Members who submit valid and timely Claim Forms shall be entitled to Settlement Class Member Payments in the full amount of the Sales Tax and Title, Transfer, and Service Fees they are owed. *Id.* The Settlement Class Members who submit Claim Forms will receive their Class Member Payments by check within 60 days from the Effective Date. *Id.* at ¶80 There will be no deductions from their distributions because Grange is directly paying all Settlement Administration costs, any Court-awarded Class Counsel Fees, and any Court-awarded Service Award. *Id.* at ¶ 77. Only one Claim Form may be submitted per Covered Total Loss Claims. *Id.* Any uncashed or undeliverable checks remaining after 120 days after final issuance shall be paid to a *cy pres* recipient subject to agreement of the parties and approval of the Court. *Id.* at ¶84.

Although Initial Postcard Notice was sent just two weeks ago, there have already been almost 800 Claim Forms submitted. With the Claims Deadline remaining open until 60 days after the Final Approval Order if there are no objections, or well after if there are, Class Counsel expects the number of Claim Forms submitted to be significantly higher by the time the Claims Deadline passes. An updated declaration of the Settlement Administrator will be submitted before the Fairness hearing to show the number of Claim Forms Submitted.

### 6. Class Representative's Service Award.

Class Counsel seeks a Service Award of $5,000.00 for Plaintiff in addition to the Settlement Class Member Payment that she will receive. Agreement at ¶ 90. The award will compensate Plaintiff for her time, effort and risk assumed in prosecuting the Action. Joint Decl. ¶ 25. Specifically, she

assisted Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to Class Counsel interviews; (2) forwarding documents and information to Class Counsel; (3) assisting Class Counsel in reviewing the Complaint and settlement documents; and (4) keeping apprised of the case and conferring with Class Counsel as needed. *Id.* In so doing, the Plaintiff was integral to the case. *Id.*

### 7. Attorneys' Fees.

Class Counsel has not been paid for their efforts or reimbursed for litigation costs. *Id.* ¶ 23. Pursuant to the Settlement, Class Counsel are entitled to request, and hereby do apply to the Court for attorneys' fees in the amount of $2,533,561.00. Agreement at ¶ 88. The attorneys' fees, which if approved by the Court, shall be paid by Grange separately from the Cash Settlement Benefits, will not reduce the amounts to paid to Settlement Class Members, and equals 20% of the Cash Settlement Benefits made available through this Settlement. *Id.* Paying Class Counsel attorneys' fees apart from the Cash Settlement Benefits ensures that the Settlement Class Members receive 100% of their claimed losses. *Id.* ¶ 24. The Parties negotiated and reached an agreement regarding attorneys' fees only after agreeing on all material terms of the Settlement. *Id.* Such award will serve to compensate Class Counsel for the time, risk and expense counsel incurred pursuing the claims herein. *Id.* Class Counsel is not seeking reimbursement for their litigation costs advanced in connection with the Action. *Id.* ¶ 23.

## III. ARGUMENT

### A. The Legal Standard for Final Approval.

Courts have emphasized the "[t]he law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). Class settlement approval proceeds in three stages: (1) preliminary approval of the proposed settlement; (2) notice to the proposed settlement class members; and (3) a final approval hearing to determine whether the proposed settlement is fair, reasonable and adequate. *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d. 985, 1026 (S.D. Ohio 2001); *see also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

Fed. R. Civ. P. 23(e) requires court approval before a class action can be dismissed via a settlement. "In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.' The Court considers a number of factors laid out in Rule 23(e)(2), as well as in *UAW*. In *UAW*, The Sixth Circuit identified seven factors to consider in determining the Settlement's fairness:(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631. At the final approval stage, Rule 23(e)(2) requires courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3);[²] and
(D) the proposal treats class members equitably relative to each other.

The *UAW* factors remain applicable even after the 2018 amendment of Rule 23(e). *Doe v. Ohio*, No. 2:91-cv-00464, 2020 U.S. Dist. LEXIS 24826, at *11 (S.D. Ohio Feb. 12, 2020) (finding that the 2018 amendment to Rule 23(e) was not intended to 'displace' the factors developed by the Circuit Courts) (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment)).

**B. This Settlement Satisfies the Criteria for Final Approval.**

The relevant factors weigh in favor of Final Approval here. First, the Settlement was reached with no collusion and is the product of good faith, informed and arm's length negotiations by competent counsel. Furthermore, a review of the fairness, adequacy and reasonableness factors demonstrates that the Settlement warrants Final Approval.

Any settlement requires balancing the claims' merits and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes her claims are meritorious and that she would prevail if she went to trial. However, Grange has taken the position that they are unfounded,

---

[²] There is no such agreement to be identified. The only agreement is the Settlement Agreement.

denies liability, and disputes Plaintiff's ability to certify a class. Up to the point of settlement, Grange was willing to vigorously litigate, going so far as to appeal the Court's preliminary ruling on appraisal to the Sixth Circuit. The Parties concluded the Settlement benefits outweigh the risks and uncertainties of continued litigation, as well as the time and expenses associated with interlocutory appellate review, contested class certification, possible second interlocutory appellate review of the class certification ruling, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Joint Decl. ¶¶ 26, 27.

> 1. _This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations._

Procedural fairness examines the negotiating process leading to the settlement. _See Priddy v. Edelman_, 883 F.2d 438, 447 (6th Cir. 1989) (court is required to examine the settlement terms and the settlement process "to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion."); Rubenstein, Newberg on Class Actions § 13:14 (5th ed. 2015) (same). "[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." _In re Inter-Op Hip Prosthesis Liab. Litig._, 204 F.R.D. 359, 380 (N.D. Ohio 2001); _Enter. Energy Corp. v. Columbia Gas Transmission Corp._, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached "[a]fter almost six months of concerted negotiations"). That is true here. Experienced attorneys familiar with the legal and factual issues represented the Parties and negotiated with the assistance of a well-respected Sixth Circuit mediator, Rod McFaull. Joint Decl. ¶ 5, and exhibits thereto. Prior to the initial mediation session, Class Counsel obtained documents and data that they reviewed and also retained an expert who analyzed the data then-available to estimate the value of Plaintiff's classwide claims. _Id._ at ¶ 11. The Parties negotiated for weeks after, both with the assistance of the mediator and on their own, eventually reaching the Settlement. _Id._ at ¶ 12.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class actions cases. _Id._ ¶ 4. In negotiating this Settlement by obtaining relevant documents, information, and data, attending mediation, and negotiating for weeks thereafter, Class Counsel had the benefit of years of experience and familiarity with the facts, as well as with other cases involving similar claims. _Id._ ¶¶ 4, 7. Furthermore, Class Counsel thoroughly investigated and analyzed Plaintiff's

claims and engaged in motion practice, extensive data analysis, and negotiation. Class Counsel retained a data expert to analyze Grange's classwide data to determine the potential scope of damages. *Id.* ¶ 10-11. They were thus able to accurately evaluate the strengths and weaknesses and value of the case, ultimately obtaining Grange's agreement to pay Settlement Class Members 100% of their damages. *Id.*

    2.  *The Facts Support a Final Determination That the Settlement Is Fair, Adequate and Reasonable.*

As stated above, the Court considers the Rule 23(e)(2) factors in conjunction with the *UAW* factors to determine the fairness and adequacy of the proposed settlement. These factors must all be considered as a whole to determine whether a proposed settlement is fair, adequate, and reasonable. *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 151 (S.D. Ohio 1992); *see also Thompson v. Midwest Foundation Independent Physicians Asso.*, 124 F.R.D. 154, 157 (S.D. Ohio Dec. 4, 1988) ("A class action settlement cannot be measured precisely against any particular set of factors, however, and the court may be guided by other factors, the relevancy of which will vary from case to case.").

    a.  The settlement falls within the range of reasonableness and provides substantial benefits to the class, in light of the likelihood of success on the merits

Courts recognize that settlements by their inherent nature often result in class members receiving less than the full potential value of their claims. *See Williams*, 720 F.2d at 922-23 ("Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class."); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) ("[T]he Court may not withhold approval simply because the benefits accrued from the agreement are not what a successful plaintiff would have received in a fully litigated case." (internal quotation marks and alterations omitted)). On top of the 100% of likely recoverable damages that Settlement Class Members will receive, the fact that Grange has changed its practice to now pay the taxes and fees it was not paying, along with the separate payment of Settlement Administration Costs and any Court awarded Class Counsel Fees and Service Award, further highlights the outstanding result obtained for the Settlement Class. Joint Decl. ¶ 30.

Plaintiff alleges Grange systematically underpays its auto insurance claimants by excluding Sales Tax and Title, Transfer, and Service Fees from the payment after declaring the vehicle a total

13

loss and purports to pay the ACV. The Settlement achieves Plaintiff's desired goal of compensating Grange insureds for their underpaid Sales Tax and Title, Transfer, and Service Fees during the Class Period, and ending the challenged practice. There was a substantial risk Plaintiff would not achieve such a result. Before Settlement, Grange unsuccessfully sought dismissal or to compel this case to appraisal. Although this Court denied Grange's motion, Grange was in the process of appealing the denial of appraisal to the Sixth Circuit. Had the Sixth Circuit reversed and added Appraisal, that would have been the end of this case proceeding as a class action. Thus, there was significant risk in proceeding.

Even if Plaintiff prevailed before the Sixth Circuit on the appraisal issue, she would need to go through discovery, class certification, a potential interlocutory appeal of a class certification, dispositive motion practice, trial, and a potential post-trial appeal. While Plaintiff prevailed at the motion to dismiss stage, other courts have ruled against Plaintiff's position, applying other states' laws. *See e.g.*, *Sigler v. Geico Cas. Co.*, No. 19-2272, 2020 U.S. App. LEXIS 23389, at *1 (7th Cir. July 24, 2020); *Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 338 (5th Cir. 2020); *Coleman v. Garrison Prop. & Cas. Ins. Co.*, No. 19 C 1745, 2020 U.S. Dist. LEXIS 16439, at *1 (N.D. Ill. Jan. 30, 2020); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867, 872 (W.D. Wis. 2019). Thus, although Plaintiff believes she has a strong case on the merits, there is no reason to litigate further and increase the risk of losing, when Grange is offering a settlement that compensates Settlement Class Members 100% of their damages.

Plaintiff and Class Counsel appropriately determined the Settlement outweighs the gamble of continued litigation. Joint Decl. ¶ 27; *see Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 781 (N.D. Ohio 2010). "Although this inquiry understandably does not require us to 'decide the merits of the case or resolve unsettled legal questions,' we cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631. This factor is easily satisfied here as this Settlement provides *complete* relief without further risk or delay. Joint Decl. ¶¶ 26, 31.

Further, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator through two mediation sessions.

14

These negotiations led the Parties to a Settlement that Class Counsel believes to be fair, reasonable, and in the Settlement Class's best interests. Class Counsel's assessment in this regard is entitled to considerable deference. Consequently, the Settlement is fair, reasonable, and adequate.

> b. The settlement suffers from no obvious deficiencies and does not improperly grant preferential treatment to the class representative or segments of the class.

There is no evidence that the Settlement suffers from "obvious deficiencies, such as unduly preferential treatment to the class representatives or of segments of the class, or excessive compensation for attorneys[.]" *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 352 (citation omitted). As discussed above, this Settlement provides complete relief to the Settlement Class Members and treats all Settlement Class members equally. Settlement Class members are entitled to submit claims that will entitle them to 100% compensation of their likely recoverable damages. In fact, the Seventh Circuit has held that a settlement granting "such essentially complete relief for the class is the model of an adequate settlement. The class members will receive everything they reasonably could have hoped for." *Levitt v. Sw. Airlines Co. (In re Sw. Airlines Voucher Litig.)*, 799 F.3d 701, 711 (7th Cir. 2015).[3] In granting full compensation to the Settlement Class Members, this Settlement presents the model of a fair settlement.

 Because the Settlement distributes proceeds based on the amount of each individual Settlement Class Member's claim, they will be treated equitably. *Peck v. Air Evac EMS, Inc.*, No. 5:18-CV-615-DCR-MAS, 2019 U.S. Dist. LEXIS 119011, at *13 (E.D. Ky. June 5, 2019) ("The Court finds that the proposed Settlement treats all Class Members equitably. Although there is great disparity between the amounts some Class Members will receive, these amounts are based on the actual number of unpaid overtime hours each Class Member worked during the relevant time period.").

While the Settlement provides for a modest Service Award to the Class Representative to compensate her for filing the Action and the time that she dedicated to the prosecution of this Action

---

[3] *Levitt* involved litigation over expired drink coupons on Southwest flights. In *Levitt*, all class members who submitted claims would get a replacement coupon on a one-for-one basis. 799 F.3d at 711. As is the case here, all Settlement Class Members who submit claims will recover their underpaid Sales Tax and Title, Transfer, and Service Fees on a dollar-for-dollar basis.

for the benefit of the Settlement Class, courts recognize that such contribution awards are appropriate and do not grant preferential treatment. *See Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *14 (S.D. Ohio May 25, 2013) (recognizing appropriateness of incentive awards). Accordingly, this Settlement does not provide for any preferential treatment to the Class Representative or segments of the Settlement Class.

   c. The opinions of class counsel favor approval of the settlement.

  In assessing the settlement, this Court should also consider the experience of counsel and their views of the settlement. *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"). Here, Class Counsel includes attorneys experienced in consumer class action litigation of this type. Joint Decl. ¶¶ 4, 5, 13, 35. Class Counsel has conducted necessary damages discovery confirming the amount of potential damages. Joint Decl. ¶¶ 10, 11, 35.

  Furthermore, Class Counsel is of the opinion that the claims-made procedure is the best way to distribute the Cash Settlement Benefits given the facts of this case such as the need to manually cross-check certain claims as well as maximizing the benefit to those Settlement Class Members who submit Claim Forms. Courts around the country have explained that a "claims-made structure does not impact the 'fairness, reasonableness, or adequacy of proposed settlement.'" *See, e.g.*, *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *18 (S.D. Fla. Oct. 24, 2014) (internal quotations omitted) (quoting *Casey v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 156553, at *5 (N.D.N.Y. Aug. 21, 2014)). Grange asserted it would not settle the case absent the claims made structure and certainly would not have settled with each Settlement Class Member receiving 100% of their likely recoverable damages. Joint Decl. ¶ 32. Courts find a defendant's refusal to settle absent a claims-made structure to be a critical factor in determining whether a claims-made settlement is fair and reasonable. *See, e.g.*, *Casey*, 2014 U.S. Dist. LEXIS 156553, at *6 (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is

irrelevant") (citing *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")); *Lonardo*, 706 F. Supp. 2d at 784 (upholding claims made process where "claim form and opt-in procedure are negotiated components of the settlement"); *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2016 U.S. Dist. LEXIS 50315, at *49 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure).

Ultimately, the question is not whether a claims made settlement compares favorably to a hypothetical settlement, but rather whether the Settlement is fair and reasonable on its own terms. *Casey*, 2014 U.S. Dist. LEXIS 156553, at *7 ("[The] Court does not have the authority to impose a preferred payment structure upon the settling parties."); *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *81 (S.D. Fla. Sep. 14, 2015) ("[A] claims-made structured settlement is fair, reasonable, and adequate on its own terms"). Here, the elimination of significant risk in favor of payment of full damages is fair and reasonable.

Moreover, even if Grange had been willing to settle on a direct-pay model, this would surely have meant a significantly lower payment amount per Settlement Class Member than under a claims-made model in which 100% of likely recoverable damages are paid for each Claim Form submitted. Plaintiff and Class Counsel believe such a diminished settlement would not have been more equitable to class members as "[n]egotiating for a smaller amount to go to Class Members would…unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount." *Lee*, 2015 U.S. Dist. LEXIS 121998, at *57. "While a claims-made settlement structure does not guarantee an award to all class members, it does tend to maximize the opportunity available to each class member." *Id.*

Plaintiff and Class Counsel created a robust Notice Program described herein. Every Settlement Class member received direct mail notice. There was also Publication Notice and Internet banner advertisements to apprise them of the Settlement. Furthermore, there are two simple methods

17

for them to submit the Claim Form, both mail and online. Accordingly, it makes no sense to send a significantly smaller amount to all Settlement Class Members, including those who are insufficiently incentivized even by the availability of full damages, at the expense of those willing to take a few minutes (at most) to check a box and submit a simple Claim Form. *See Lonardo*, 706 F. Supp. 2d at 781 (upholding claims made settlement where the amount paid "far exceeds the value of the stamp and the effort required to return the claim form" in addition to the value of prospective relief). Given the experience of Class Counsel in this matter and in similar matters, their opinions that the Settlement terms are fair, adequate, and reasonable should be given substantial weight in approving the Settlement.

        **d.**   <u>The reaction of absent class members weighs in favor of approval of the settlement.</u>

The Reaction of the Settlement Class has been overwhelmingly positive. Out of approximately 16,676 Settlement Class members, none have opted-out by the day this Motion was filed, and *no objections* have been filed. Admin. Decl. ¶¶ 23, 25. Even a small number of opt-outs and objections, especially in a large class, demonstrates that class members recognize the settlement's substantial benefit and indicates that the settlement is fair, reasonable and adequate. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *12 (S.D. Ohio Oct. 17, 2018) (citing *Hainey v. Parrott*, 617 F.Supp.2d 668, 675 (S.D. Ohio 2007)). Following the Opt-Out Period and objection deadline, Class Counsel will file an updated declaration from the Settlement Administrator advising the Court as to any opt-outs or objections, if any.

        **e.**   <u>The public interest also merits in favor of approval of the settlement.</u>

"Public policy generally favors settlement of class action lawsuits." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at *36 (N.D. Ohio Sep. 23, 2016) (quoting *Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014)). "Settlement in this case 'provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources.'" *Id.* (quoting *Stinson*). "Settlement agreements should [ ] be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before

over-burdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Here, in light of the result whereby Settlement Class Members are receiving 100% of their likely recoverable damages at trial, the public interest is well-served by granting Final Approval of the Settlement.

### C. Notice to the Settlement Class Was Adequate and Satisfied Rule 23 and Due Process.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311.

The Notice Program that this Court preliminarily approved satisfies due process and Rule 23 as it provided direct notice through the Mailed Notice and Publication Notice. *See* Fed. R. Civ. P. 23(c)(2); *Frost v. Household Realty Corp.,* 61 F. Supp. 3d. 740, 744 (S.D. Ohio 2004); *Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 WL 5162380, at *11 (N.D. Ohio. Oct. 14, 2014) (approving notice where "notice was disseminated via individual mailing to all Class Members identified in the customer data files of [the defendant], and also by publication"). Moreover, the Settlement provided for Web Notice, via Internet banner advertisements, to further reach Settlement Class members, the creation of a Settlement Website, and an automated toll-free telephone line for Settlement Class members to call with inquiries and receive answers to frequently asked questions.

Additionally, the content of the Notice satisfied due process and Rule 23. *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (approving notice that described settlement

terms, why the class representatives decided to settle, the settlement's legal effect, and the right to voice objections). Here, it

> reasonably apprised the Class Members of the nature and pendency of the Class Action and the class claims; of all material elements of the proposed settlement, including but not limited to the definition of the Settlement Class, the relief available under the proposed settlement and steps necessary to obtain the relief; of the res judicata effect on Class Members and of the right, time and manner to object to the settlement; of the identity of Plaintiffs' and Defendant's Counsel and of information necessary to communicate with Plaintiffs' Counsel; that complete information is available in the Court's files; and of the right to appear at the Fairness Hearing, including through an attorney. Full opportunity has been afforded to Class Members to be heard at and to participate in the Fairness Hearing.

*Koenig v. USA Hockey, Inc.*, 2012 WL 12926023, at *12 (S.D. Ohio 2012). Additionally, the Notice informed Settlement Class members that they may receive more information on the Settlement website, where they can view and access the Agreement and other court documents. Admin. Decl. Ex. B.

As described more fully in Section II.B.4. above, the Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Grange has available about the Settlement Class. Joint Decl. ¶ 20. It was reasonably calculated under the circumstances to apprise Settlement Class members of: the material terms of the Settlement; the deadline for them to exclude themselves from the Settlement Class; the deadline to object to the Settlement; the Final Approval Hearing date; and the Settlement Website address to access the Agreement and other related documents and information. Joint Decl. ¶ 18; Admin. Decl. *passim*. The Notice Program constituted sufficient notice to all persons entitled to notice. Joint Decl. ¶¶ 18, 41. The Notice Program satisfied all applicable requirements of law, including Fed. R. Civ. P. 23 and constitutional due process. *Id.*; Admin. Decl. ¶ 18. Again, it effectively reached 99.72% of Settlement Class members. Admin. Decl. ¶ 9. While this Motion is submitted shortly after the commencement of the Notice Program, the Notice Program is robust to encourage the submission of as many Claim Forms as possible.

**D. Certification of the Settlement Class Is Appropriate.**

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class for Settlement purposes. (ECF # 40). Now, for settlement purposes, Plaintiff respectfully requests that

the Court finally certify the Settlement Class. As explained at Preliminary Approval, certification for settlement purposes is appropriate under Fed. R. Civ. P. 23(a) and (b)(3) because:

(1) the Settlement Class of 16,676 Grange Insureds is so numerous that joinder of all members is impracticable. Joint Decl. ¶ 36;

(2) there are questions of law or fact common to the Settlement Class including whether Grange's alleged systematic practice of not paying Sales Tax or Title, Transfer, and Service Fees breached its insurance policies. *Id.* ¶ 37.

(3) Plaintiff is typical of absent members of the Settlement Class as she was subjected to the same Grange claim handling practices and alleged non-payment of Sales Tax and Title, Transfer, and Services Fees, suffering the same injuries, and she will benefit equally from the Settlement relief, *Id.* ¶ 38; and

(4) Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent Settlement Class members have the same interest in the Settlement's relief, and the absent Settlement Class members have no diverging interests. *Id.* ¶ 39. Plaintiff is represented by qualified and competent counsel who devoted a substantial time to the litigation and who has extensive experience and expertise prosecuting complex class actions, including consumer actions like the instant case. *Id.*

Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *Id.* ¶ 40; *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### E. Notice Pursuant to the Class Action Fairness Act.

The Class Action Fairness Act requires settling defendants give notice of a settlement to state and federal officials, supplying all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). On August 14, 2020, the Settlement Administrator sent notice of the class action settlement in this Action via FedEx to the United States Attorney General and to the Attorneys General of 43 states where the class member data indicated at least one Class Member was a resident.

Admin. Decl. ¶ 6, Ex. A. All of the CAFA notices were delivered between August 17, 2020, and August 19, 2020. *Id.* ¶ 6. The CAFA notice protects class members from a settlement that may be deemed unfair or inconsistent with regulatory policies and from class action abuse.

### F. Application for Service Award

As noted above, a $5,000.00 Service Award is sought for Plaintiff as Class Representative. While the Settlement provides for a modest Service Award to the Class Representative to compensate her for filing the Action and the time that she dedicated to the prosecution of this Action for the benefit of the Settlement Class, courts recognize that such contribution awards are appropriate and do not grant preferential treatment. *See Johnson,* 2013 U.S. Dist. LEXIS 74201, at *14 (recognizing appropriateness of incentive awards). And the proposed $5,000.00 Service Award to Plaintiff falls well within the range of awards approved in this Circuit. *See Liberte Capital Grp. v. Capwill*, No. 5:99-cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007) ("Incentive awards, where appropriate, generally range from a few thousand dollars to $85,000") (collecting cases); *see also Johnson,* 2013 U.S. Dist. LEXIS 74201, at *14 (service award of $12,500); *Mullins*, 2019 U.S. Dist. LEXIS 11019, at *17 (service award of $10,000); *Dillow*, 2018 U.S. Dist. LEXIS 170579, at *21 (service award of $8,500). A Service Award is warranted here given that Plaintiff was essential to Class Counsel's ability to prepare and bring this case and, at $5,000.00, is at the low end of Service Awards that have been held reasonable by Courts in this District. *See Id.*

Moreover, like Class Counsel's attorney's fee request, this request for a Service Award should bear the presumption of reasonableness as it too is being paid separately by Grange and will not dilute any payment to the Settlement Class Members. *See Cowit* 2015 U.S. Dist. LEXIS 143156, at *19. Thus, Class Counsel respectfully requests that this Court grant the Service Award to the Plaintiff.

### G. Application for Attorneys' Fees

In this Settlement, the Notice provides that Class Counsel will request an attorneys' fee of $2,533,561.00—to be paid separately by Grange—which is an amount equal to 20% of the maximum Cash Settlement Benefits. Admin. Decl. Exs. B, C. As of the filing of this Motion, which was after Notice was provided to the Settlement Class, there have been no objections to the requested fee.

22

Admin. Decl. ¶ 25; Joint Decl. ¶ 24. Class Counsel does not expect any objections to be filed before the deadline as Settlement Class Members will receive 100% of their likely recoverable damages and the attorneys' fees will not reduce their recovery. Joint Decl. ¶ 24. The Parties negotiated and reached an agreement regarding attorneys' fees only after reaching agreement on all other material terms of this Settlement. *Id.* For the reasons stated below, Class Counsel's application should be approved.

### 1. The Standard for Awarding Attorneys' Fees to Class Counsel

"Rule 23(h) of the Federal Rules of Civil Procedure authorizes a court to award 'reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 188074, at *28 (N.D. Ohio Jan. 26, 2016). "Trial courts within the Sixth Circuit have the discretion to calculate an award of attorneys fees in common fund cases by using either a percentage of the fund calculation or a lodestar/multiplier approach." *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 18838, at *4-5 (S.D. Ohio Feb. 28, 2008). The Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993). Nevertheless, the percentage of the fund method is preferred in common fund cases. *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *12 (S.D. Ohio Oct. 3, 2018) ("In the Southern District of Ohio, the preferred method is 'to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'"). "Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *31 (S.D. Ohio Jan. 25, 2011) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)). "Negotiated and agreed-upon attorneys['] fees as part of a class-action settlement are encouraged as an 'ideal' toward which the parties should strive." *Bailey*, 2008 U.S. Dist. LEXIS 18838, at *2-3.

In a case involving a class action settlement that created a reversionary common fund, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund

established for the benefit of the class. *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015). "The 'common fund' analysis is appropriate even where the fee award will be paid separately by Defendants." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014); *accord Arledge*, 2018 U.S. Dist. LEXIS 179474, at *9 (holding same) (citing *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 U.S. Dist. LEXIS 157375, 2011 WL 13202629, at *1 (S.D. Ohio Jan. 10, 2011)). Additionally, "courts are especially amenable to awarding negotiated attorneys['] fees and expenses in a reasonable amount where that amount is in addition to and separate from the defendant's settlement with the class." *Bailey*, 2008 U.S. Dist. LEXIS 18838, at *3. "Indeed, most courts recognize that fees negotiated and paid separate and apart from the class recovery, as here, are entitled to a 'presumption of reasonableness.'" *Cowit v. CitiMortgage, Inc.*, Civil Action No. 1:12-cv-869, 2015 U.S. Dist. LEXIS 143156, at *19 (S.D. Ohio Oct. 21, 2015).

"The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings*, 9 F.3d at 516. In addition to being far simpler, awarding a percentage of the fund "directly aligns the interests of the class and its counsel . . . ." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). This method further incentivizes class counsel to obtain the largest possible recovery in the most efficient manner possible. *Id.*; *Rawlings*, 9 F.3d at 516. "[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources. District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Rawlings*, 9 F.3d at 516-17.

The one common criticism with the percentage of the fund method is that it incentivizes attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested. *Id.* at 516. However, this concern is easily dispensed with in this case as Class Counsel obtained a recovery of 100% of the likely recoverable damages had this case gone to

trial. There would be no purpose in requiring Class Counsel to expend more hours in this case and risk an adverse decision from the Sixth Circuit in order to increase their fee. In fact, given the complete recovery, the lodestar method would create a conflict between Class Counsel and the Settlement Class members.

The percentage method is an appropriate method of fee recovery here because, among other things, it aligns Class Counsel's interest in being paid a fair fee with the Settlement Class's interests. Class Counsel achieved the maximum recovery in the shortest amount of time required under the circumstances and should be appropriately compensated for this incredible accomplishment. It is supported by public policy, has been recognized as appropriate by the Supreme Court for cases of this nature, and represents the current trend in the Sixth Circuit and Southern District of Ohio.

"To determine the amount of the 'fund' for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs." *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *9.[4] Furthermore, "[t]o determine the amount of the benefit conferred, courts look to the total amount made available to the class, rather than the amount ultimately claimed by class members." *Id.* at *10 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)); *accord Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *11 (S.D. Ohio Jan. 17, 2019); *Dillow*, 2018 U.S. Dist. LEXIS 170579, at *13; *Rikos v. P&G*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722,

---

[4] When considering the $70,000.00 in Settlement Administration Costs being paid separately by Grange, the requested fees are actually slightly less than 20% of the Cash Settlement Benefits. Furthermore, when factoring in the millions of dollars of payments now automatically going to insureds as a result of Grange's practice change following the filing of this Action, the requested fees are substantially less than 20%. Although Class Counsel is not seeking fees based on the value of the Settlement Administration Costs, separately-paid attorneys' fees and Service Award, and the practice change, Courts have long allowed class counsel to seek fees based upon the value of theaw benefits. In other words, it would have been reasonable and justified for Class Counsel to have negotiated a higher fee as the true value of their efforts is far greater than $2,533,561.00. Under Sixth Circuit precedent, Class Counsel could have asked this Court to base its fee award of the Cash Settlement Benefit of $12,667,804.00, the Settlement Administration Costs (estimated to be $70,000.00), the Service Award of $5,000.00 (if approved) and the fees of $2,533,561.00 (if approved), that Grange agreed to pay separately. In that scenario, it would have been reasonable for Class Counsel to ask for 30% of $15,271,365.00, equating to $4,581,409.50. When considering these numbers, Class Counsel's request is only 16.5% of the Cash Settlement Benefits.

at *22 (S.D. Ohio Apr. 30, 2018). Class Counsel could have also asked for a fee on the value of the practice change. *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003); *see also* Principles of the Law of Aggregate Litigation, § 3.13(b) (American Law Institute, 2010) ("[A] percentage of the fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement."). Despite Class Counsel's entitlement to include its own attorneys' fees, administration costs, and litigation costs as part of the calculation of the size of the common fund, Class Counsel apply for an award based on only on  a percentage based on the maximum Cash Settlement Benefits, without accounting for these additional benefits to the Settlement Class. Moreover, Class Counsel is not requesting to be reimbursed their litigation costs, the most notable of which is the cost of its expert to analyze the data provided by Grange and value the case.

Finally, the 20% requested fee is at the low end of the percentages awarded in this Court. Typically, the percentage awarded ranges from 20 to 50 percent of the common fund. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) (collecting cases). Thus, when considering the factors set forth by the Sixth Circuit in *Ramey*, and application of the *Ramey* factors to the unique facts of this case, Class Counsel's fee request is reasonable.

> In reviewing the reasonableness of the requested fee award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides.

*Arledge*, 2018 U.S. Dist. LEXIS 179474, at *11 (citing *Ramey*, 508 F.2d at 1196).

### 2. *The Ramey Factors*

#### a) The value of the benefits rendered to the class

As discussed above, the value of the benefits rendered to the Settlement Class is substantial. In fact, Settlement Class Members who submit Claim Forms will receive 100% of their likely recoverable damages. Additionally, the Settlement Class is receiving the benefits of the Settlement

26

Administration Costs being paid separately by Grange as well as prospective relief due to Grange's practice change. "The settlement provides tangible relief to Class Members now and eliminates the risk and uncertainty parties would otherwise incur if this litigation were to continue." *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *12. Grange vehemently denied any wrongdoing and showed its willingness to vigorously litigate this case in this Court and before the Sixth Circuit. In the face of this "formidable and determined opposition of Defendants, Plaintiffs' Counsel have conferred a substantial benefit upon the Class." *Merkner*, 2011 U.S. Dist. LEXIS 157375, at *10. As recognized by the Seventh Circuit, "[w]hen counsel come away from the negotiating table with everything the client could hope for, they should be compensated accordingly." *Levitt*, 799 F.3d 701, 712 (7th Cir. 2015).

b) <u>Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others</u>

"There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases. Adequate compensation is necessary to encourage attorneys to assume the risk of litigation in the public interest." *Connectivity Sys. Inc.*, 2011 U.S. Dist. LEXIS 7829, at *36-37. "[T]here is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and attorneys who take on class action cases enable this." *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *12. Class Counsel's effort resulted in a substantial monetary benefit for the Settlement Class members, many of whom "would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant." *Id.* Society has a stake in rewarding attorneys, like Class Counsel here, "who achieve a result that the individual class members probably could not obtain on their own." *Id.* at *12-13 (citations omitted).

c) <u>Whether the services were undertaken on a contingent fee basis</u>

Class Counsel confirm that the retention agreement with the Plaintiff is a contingent fee agreement. Joint Decl. ¶ 23. No payment of attorneys' fees would occur in this case but for a fee award in an individual or class settlement. *Id.* Consistent with standard-contingent fee agreements in individual cases, were the case to settle on an individual basis, Class Counsel was entitled an amount

27

higher that what they request here. *Id.* ¶ 23. Class Counsel took on this case with no guarantee they would receive any compensation for their work, which occupied significant resources at Class Counsel firms even before this case was filed.

### d) The value of the services on an hourly basis (the lodestar crosscheck)

This lodestar crosscheck factor does not weigh against approval of the fee request when considered in context with the Sixth Circuit's guidance that the only requirement for awards of attorney's fees in common fund cases is that they "be reasonable under the circumstances." *Rawlings* 9 F.3d at 516. Class Counsel believes that the lodestar crosscheck is not necessary where the class receives 100% of its likely recoverable damages and attorneys' fees are paid separately. Nevertheless, Class Counsel will submit their time sheets should this Court so require. While this case was settled early on, it was settled at the point of maximum leverage by Plaintiff. This is evidenced by the fact that she secured 100% of the likely recoverable damages for all Settlement Class Members who submit Claim Forms. The case was settled while Grange's interlocutory appeal to the Sixth Circuit of the Court's denial of its motion to compel appraisal was pending. Sufficient work and legal and factual analysis occurred to allow Class Counsel to determine the benefits of resolving the case at what is arguably an "early" stage to give the Class immediate relief. Most significantly, Class Counsel conducted sufficient informal and confirmatory discovery to value the case and to attain the maximum benefit to the Settlement Class, ultimately negotiating Grange's agreement to pay 100% of Settlement Class Members' likely recoverable damages along with Settlement Administration Costs and the practice change. This lawsuit also resulted in the practice change that is consistent with what Planitiff alleges Grange should have been doing all along, automatically pay Sales Tax and Title, Transfer, and Service Fees on Covered Total Loss Claims. Class Counsel should not be penalized for extracting maximum settlement value as efficiently as possible. *See Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 199 (D.D.C. 2011) (settlement here "does not come too early to be suspicious nor too late to be a waste of resources, but instead at a desirable point in the litigation for the parties to reach an agreement and to resolve the issues without further delay, expense, and litigation.") (internal quotations omitted); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011) ("That a case

28

is settled early does not establish that the class was ill-represented or that the settlement was the product of collusion.").

The Sixth Circuit could have agreed with Grange and erased the value created by the early victory in this Court. With the clear risk of Sixth Circuit reversal, Class Counsel took the opportunity to settle the case. Given that Class Counsel obtained maximum benefits for the class, this Court should exercise its discretion to simply award a percentage of the fund. *Bailey*, 2008 U.S. Dist. LEXIS 18838, at *4. To do otherwise would only chill other lawyers from pursuing risky consumer class cases worthy of pursuit on a contingent fee basis. Recognizing this necessary incentive for class attorneys to pursue risky class actions on a contingency basis, some Courts within this District have evaluated this factor not as the value of the services on an hourly basis, but rather, their value in the marketplace. *Merkner*, 2011 U.S. Dist. LEXIS 157375, at *11 ("The percentage fee sought here consistent with practice in the private marketplace where contingent fee attorneys typically negotiate percentage-based fee agreements with their clients."). As in *Merkner*, "[a]bsent a class action, small individual claimants would lack the resources to litigate a case of this magnitude." *Id.* However, the 20% fee requested by Class Counsel is even lower than the practice in the private marketplace. Thus, Class Counsel's requested fee is consistent with the value of the services performed and should be awarded.

> e) <u>The complexity of the litigation</u>

As stated above, even if Plaintiff prevailed before the Sixth Circuit on the appraisal issue, she would need to go through full class and merits discovery, class certification, a potential interlocutory appeal of a class certification, dispositive motion practice, trial, and a potential post-trial appeal. Furthermore, while Plaintiff prevailed at the motion to dismiss stage, other courts have ruled against Plaintiff's position, applying other states' laws. *See e.g.*, *Sigler*, 2020 U.S. App. LEXIS 23389, at *1; *Singleton*, 953 F.3d at 338; *Coleman*, 2020 U.S. Dist. LEXIS 16439, at *1; *Thompson*, 420 F. Supp. 3d at 872.

While there are a number of similar cases around the country, none have been tested by a full blown jury trial yet. Thus, there were substantial and complex obstacles in Plaintiff's way. Given that Grange is offering a settlement that compensates Settlement Class Members 100% of their likely

recoverable damages, this factor fully weighs in support of approving Class Counsel's requested fee.

f) <u>The professional skill and standing of counsel on both sides.</u>

Class Counsel are experienced in class action litigation, serving as lead or co-lead counsel in dozens of consumer class actions in federal and state courts throughout the country. Joint Decl. ¶ 4. Counsel used their experience to obtain a great result for the Settlement Class. "[T]he quality of representation is best measured by results, and such results may be calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement.'" *Goldberger v. Integrated Res.*, 209 F.3d 43, 55 (2d Cir. 2000) (citation omitted). Here, the Settlement representing a 100% recovery of the most likely recoverable damages is the best possible result. Thus, the Court should easily find counsel achieved success. Joint Decl. ¶ 27.

The quality of defense counsel is also important in evaluating the quality of class counsel's work. *See Arledge*, 2018 U.S. Dist. LEXIS 179474, at *15. Grange is represented by Rodger Eckelberry, Esq., of the prominent national firm, Baker & Hostetler LLP. He has defended numerous insurance companies in class actions. Counsel have professionally and zealously represented the Parties.

## IV.    **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order; (5) award a Class Representative Service Award in the amount of **$5,000.00**; (6) award attorneys' fees to Class Counsel in an amount of **$2,533,561.00**; (7) and enter final judgment dismissing this Action, reserving jurisdiction over settlement implementation. For the Court's convenience, a proposed Final Approval Order is attached hereto as ***Exhibit D***.

DATED: October 16, 2020.

*/s/ Jeff Ostrow*

**KOPELOWITZ OSTROW P.A.**

Jeff Ostrow (*pro hac vice*)
Jonathan M. Streisfeld (*pro hac vice*)
Joshua R. Levine (*pro hac vice*)
1 W. Las Olas Blvd, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
levine@kolawyers.com

**EDELSBERG LAW, P.A.**

Scott Edelsberg (*pro hac vice*)
20900 N.E. 30th Avenue
Suite 417
Aventura, FL 33180

**DAPEER LAW, P.A.**

Rachel Dapeer, Esq. (*pro hac vice*)
20900 N.E. 30th Avenue
Suite 417
Aventura, FL 33180

**SPANGENBERG SHIBLEY & LIBER LLP**

Stuart Scott
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 33114

**SHAMIS & GENTILE, P.A.**

Andrew Shamis (*pro hac vice*)
14 NE 1st Avenue
Suite 1205
Miami, FL 33132

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2020, the foregoing was filed via CM/ECF, which caused a true and correct copy to be served to all counsel of record.

Respectfully submitted,

By: */s/ Jeff Ostrow*
      Jeff Ostrow