**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| VICKI OSTENDORF, | : | |
| | : | **Case No. 2:19-cv-1147** |
| Plaintiff, | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | **Magistrate Judge Jolson** |
| GRANGE INDEMNITY INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

## FINAL ORDER AND JUDGMENT

This matter is before the Court on Plaintiff's Unopposed Motion Final Approval of Class Action Settlement and Application for Attorneys' Fees and Service Award. (ECF No. 44). For the following reasons, this Court **GRANTS** Plaintiff's Motion for Final Approval of Class and Collective Action Settlement, **GRANTS** Plaintiff's Application for a Service Award to Plaintiff Ostendorf in the requested amount of $5,000.00, and **GRANTS** the Plaintiff's Application for Attorney's Fees.

## I.      BACKGROUND

This case is before the Court under its diversity jurisdiction, with Plaintiff bringing claims for breach of contract and declaratory relief. (ECF No. 1). Plaintiff filed a Class Action Complaint against Defendant, a large private-passenger auto insurance carrier, concerning Defendant's comprehensive and collision coverage. Plaintiff alleges systemic underpayment by Defendant for Actual Cash Value ("ACV") losses suffered by insureds whose vehicles were a "total loss" under the plan; she contends that Defendant refuses to pay full ACV payments or full total loss payments ("FTLP") to first-party total loss insureds on physical damages policies. The alleged underpayment

1

results from Defendant's alleged practice of failure to include sales tax and/or vehicle title transfer and vehicle registration fees when it calculated ACV for its insureds.

On January 13, 2020, this Court denied a motion to dismiss for failure to state a claim, finding that Plaintiff had sufficiently alleged breach of contract and declaratory judgment claims. (ECF No 24). On February 12, 2020, the parties filed a Joint Motion to Stay while the parties engaged in mediation (ECF No. 30), which was granted by this Court on February 13, 2020 (EVF No. 32). On August 5, 2020, the parties filed a Joint Motion to Lift the Stay, indicating that they had reached a class action settlement via the Sixth Circuit Mediation Program. (ECF No. 37). Plaintiff simultaneously filed an Unopposed Motion for Preliminary Settlement Approval. (ECF No. 38). On September 8, 2020, this Court granted the Joint Motion to Lift Stay and the Unopposed Motion for Preliminary Settlement Approval, finding that the Settlement meets the considerations set forth in Fed. R. Civ. P. 23(e). (ECF No. 40). This Court approved the filed notices and directed the Settlement Administrator to effectuate notice to the Settlement Class; this Court also scheduled this fairness hearing for December 1, 2020, at 9:00 a.m. (*Id.*). On October 16, 2020, the Plaintiff filed an Unopposed Motion for Final Settlement Approval and Application for Attorneys' Fees and Service Award. (ECF No. 44). The Settlement Administrator also filed a supplemental declaration on November 30, 2020. (ECF No. 45). On December 1, 2020, this Court held a fairness hearing.

## II.  MOTION FOR FINAL SETTLEMENT APPROVAL

### A.  Class Certification for the Purposes of Settlement

Pursuant to Fed. R. Civ. P.23(a) and 23(b)(3), Plaintiffs request certification, for settlement purposes only of a Settlement Class consisting of the following:

> All Grange insureds who submitted a Covered Total Loss Claim and who received a Total Loss Claim Payment from Grange that did not include Sales Tax and/or

2

Title, Transfer, and Service Fees, and who was not subsequently paid Sales Tax and/or Title, Transfer and Service Fees during the Class Period.

Excluded from the Settlement Class is Grange, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

The Court now finds that the above Settlement Class definition satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23 for settlement purposes, namely:

- The Class Members are so numerous that joinder of all of them in this action is impracticable;

- There are questions of law and fact common to the Class Members, which predominate over any individual questions;

- The claims of the Class Representative is typical of the claims of the Class Members;

- The Class Representative and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and

- Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

Accordingly, pursuant to Rule 23(b)(3), the Court hereby certifies the above-defined Settlement Class with respect to the claims asserted this Action. Pursuant to Rule 23(a), for settlement purposes the Court approves the Plaintiff, Vicki Ostendorf, as the Class Representative and further appoints as Class Counsel Kopelowitz Ostrow P.A., Spangenberg Shibley & Liber LLP, Shamis & Gentile, and Dapeer Law, P.A.

### B.  Overview of Settlement Terms

The Agreement seeks to resolve all claims in this suit. (ECF No. 44-1 at 22–23). Under the Agreement, Defendants are obligated to pay Settlement Class Members an aggregate of up to

3

$12,667,804.00 in Cash Settlement Benefits to be divided between Eligible Settlement Class members. (ECF No. 44-1 at 10). Settlement Class Members will receive the sales on the ACV of their total loss vehicle at the Ohio average sales tax rate of 7.1%, and Title, Transfer, and Service Fees will be paid out by a schedule, with amount varying based upon the date of the Settlement Class Member's total loss. (No. 44-1 at 20–21). To receive a payment, Settlement Class members must submit a claim form, to be evaluated by the Settlement Administrator. (ECF No. 44-1 at 19–20). Within 60 days from the effective date of the settlement, the Settlement Administrator will send a check to Settlement Class Members for their Settlement Class Member Payments. (*Id.*). Defendant will pay all costs associated with sending these payments. (*Id.*).

Defendant has also agreed not to oppose Class Counsel's request for attorneys' fees of up to $2,533,561.00, which will be paid separately from the Cash Settlement Benefits and ensures that Settlement Class Members receive 100% of their claimed losses. (ECF No. 44-1 at 24). The attorneys' fee request would be equal to 20% of the maximum Cash Settlement Benefits. (*Id.*).

Class Counsel also seeks approval of a Service Award to Plaintiff for $5,000, to be paid separately from the Cash Settlement Benefits. (ECF No. 44-1 at 25). The Service Award would be paid in addition to the Class Representative's Settlement Class Member Payment. (*Id.*). The Defendant does not oppose this request. (*Id.*).

### C.    Claims Process

The Settlement Administrator identified 16,676 Class Members with a mailing address, after de-duplicating mailing data and updating addresses using the National Change of Address Database. (ECF No. 44-3 at 2–3). Out of the spreadsheet of Class Members received, the Settlement Administrator determined that 43 did not have a complete mailing address, and so they were not included on the "Class Mailing List." (*Id.*). The Settlement Administrator sent the initial

postcard notice via USPS on September 29, 2020. (*Id.* at 3). For those postcards returned as undeliverable, the Settlement Administrator pledged to use "all reasonable secondary efforts to deliver the notice," including re-mailing to a forwarding address and conducting an advanced address search. (*Id.*). As of November 26, 2020, 1,669 notices had been returned as undeliverable. (*Id.*). The Settlement Administrator re-mailed 184 notices to forwarding addresses provided to USPS and was able to conduct advanced research resulting in updated address information for an additional 954 class members. (*Id.*). Of those re-mailed in this manner, 175 notices have been returned as undeliverable. (ECF No. 45 at 2).

As of November 26, 2020, the Settlement Administrator had received 2,633 mailed claim submissions and 1,191 online claim submissions (*Id.* at 2). The total tax value of claims processed as of November 26, 2020, and matched to an existing class member record is $1,670,465.39. (*Id.*). The total tag/title value of those claims is $53,703.75. (*Id.*). The Settlement Administrator found that 97 claims could not be matched to a record in the class member data and 33 claims were determined to be duplicative. (*Id.*). One claim was withdrawn at the request of the Class Member. (*Id.* at 2–3). The Settlement Administrator received one timely request for exclusion which was filed with the Court. (*Id.* at 3). The Settlement Administrator has received no opt-out requests. (*Id.*). No objections have been filed with the Court.

### D.      FINAL APPROVAL UNDER RULE 23

#### 1.      Sufficiency of Notice

In class actions certified under Rule 23(b)(3), notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e).  Rule 23(e) specifies that no class action may be settled, dismissed, or compromised without court approval, preceded by notice to class members. Fed. R. Civ. P. 23(e).  Rule 23(c)(2) requires that notice to the class be "the best notice

5

that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 629-30 (6th Cir.  2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the Settlement Administrator issued notice in several ways to the Settlement Class. First, class members received the Initial Postcard Notice, which included a tear-off Claim Form to return to the Settlement Administrator. (ECF No. 38-1). Those receiving notice by mail likewise received a second reminder postcard 21 days after the mailing of the Initial Postcard Notice. (ECF No. 38-4; Settlement at 17). Second, the Settlement Administrator placed the Long Form Notice on the website for the settlement, and would also provide the Long Form Notice upon request. (ECF No. 38-5; Settlement at 16). Third, the Settlement Administrator published a Publication Notice in several newspapers covering major areas of Ohio. (ECF No. 44-1 at 17). Finally, the Settlement Administrator placed an Internet banner notice online, directing class members to the settlement website. (ECF No. 44-1 at 17–18).

In this case, the Settlement Notices "'fairly apprise[d] the prospective members of the class of the terms of the proposed settlement' so that class members [could] come to their own conclusions about whether the settlement serves their interests." *Id.* at 630 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)).  The Notices "explained [their] purpose, discussed the nature of the pending suit and proposed class and accurately summarized the [ ] settlement agreement." *Id.* The Notices also informed settlement class members of their option to opt out or object. Furthermore, a variety of methods were used to reach class members. A total of

175 of 16,676 notices were returned as undeliverable, after the Settlement Administrator conducted advanced address research. (ECF No. 45 at 2). This represents a delivery rate of approximately 98.96%. The Settlement Administrator's banner advertisements delivered 6,594,396 impressions and its Facebook advertisements delivered 986,005 impressions. (*Id.*). Finally, the Settlement website has had 5,079 unique visitors and 22,461 page views as of November 26, 2020. (*Id.*).

The Court therefore finds that the Notice Program provided all members of the Settlement Class with fair and adequate notice of the terms of the Settlement, how to request exclusion or object, and the time and place of the Fairness Hearing. Finally, the Court finds the Notice was clearly designed to, and in fact did advise Settlement Class members of their rights and satisfied the requirements of Rule 23.

### 2. Fairness, Reasonableness, and Adequacy

Before approving a settlement agreement, the Court must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). In determining whether the proposed settlement is fair, reasonable and adequate, the Court considers several factors:

(1) the risk of fraud or collusion;

(2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(4) the likelihood of success on the merits;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest.

*UAW*, 497 F.3d at 631.  In reviewing a proposed class action settlement, the district court has

"'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v.*

*Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG*

*Corp.,* 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

 The court may limit the fairness hearing "to whatever is necessary to aid it in reaching an

informed, just and reasoned decision." *Tenn. Ass'n of HMOs*, 262 F.3d 559, 567 (6th Cir. 2001)

(citations omitted). The court should not, at the fairness hearing, "determine the merits of the

controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams*

*v. Yukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904

(S.D. Ohio 2001). A court, however, "cannot 'judge the fairness of a proposed compromise'

without 'weighting the plaintiff's likelihood of success on the merits against the amount and form

of the relief offered in the settlement.'"  *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands,*

*Inc.*, 450 U.S. 79, 88 n.14 (1981)).  "Parties to the settlement must proffer sufficient evidence to

allow the district court to review the terms and legitimacy of the settlement." *Id.* at 635.  Here,

this Court finds that the proposed settlement is fair, adequate, and reasonable.  All seven factors

militate in favor of approval of the settlement.

 First, the Agreement is not the risk of fraud or collusion. The parties reached a settlement

after approximately one-and-a-half years of contested litigation. The parties engaged in two

mediation sessions as part of the Sixth Circuit Mediation program, after which negotiations

between the parties continued for several weeks. (ECF No. 44-2 at 3). "The participation of an

independent mediator in settlement negotiations virtually insures that the negotiations were

conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No.

1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008). Prior to mediation, the parties

exchanged documents and data, and Class Counsel had also retained and consulted with an expert to assess the representations made by the Defendant. (ECF No. 44-2 at 3).

Second, the complexity, expense, and likely duration also weigh in favor of approving the settlement. The exchange of documents and data prior to mediation, as well as the retention of an expert by Class Counsel, allowed them "to evaluate with confidence the strengths and weaknesses of Plaintiff's claims and prospects for success at class certification, summary judgment, and trial." (*Id.*). If the litigation were to continue, Class Counsel has identified significant barriers for the Plaintiff to prevail, including a pending appeal, motions for class certification, summary judgment, trial, and potential further appeals; at this point, Class Counsel has achieved a settlement that would allowed 100% recovery of class members' "likely recoverable damages without further delay," and can avoid the "gamble of continued litigation" which could leave Plaintiff and the Settlement Class empty-handed. (*Id.* at 7). Were the settlement not approved at this juncture, expenses would only continue to increase, making a future settlement where attorneys' fees may not threaten the class recovery less likely.

While the parties have engaged in limited discovery, the third factor still weighs in favor of approval. Class Counsel represents that the parties have exchanged sufficient documents and data to facilitate the settlement, and if the settlement is not approved, Class Counsel indicates an increase in both time and expenses to complete fact and expert discovery. (ECF No. 44-2 at 7); *see also Kritzer*, 2012 WL 1945144, at *7 (considering the stage of the proceedings and the amount of discovery taken to date in order to determine whether the parties have had access to the information needed to adequately assess their case).

The fourth factor—the likelihood of success on the merits—likewise weighs in favor of settlement. Although Plaintiff's claims are strong, "given the factual and legal complexity of the

case, there is no guarantee that Plaintiffs would prevail at trial." *Dillworth*, 2010 WL 776933, at

*6. While Plaintiff prevailed at the motion to dismiss stage here, other courts have ruled against

litigants advancing a position similar to Plaintiff's after applying other states' laws. *See, e.g.*, *Sigler*

*v. Geico Cas. Co.*, No. 19-2272, 2020 U.S. App. LEXIS 23389, at *1 (7th Cir. July 24, 2020);

*Singleton v. Elephant Ins. Co*., 953 F.3d 334, 338 (5th Cir. 2020); *Coleman v. Garrison Prop. &*

*Cas. Ins. Co.*, No. 19 C 1745, 2020 U.S. Dist. LEXIS 16439, at *1 (N.D. Ill. Jan. 30, 2020);

*Thompson v. Progressive Universal Ins. Co*., 420 F. Supp. 3d 867, 872 (W.D. Wis. 2019). Class

counsel notes that, if the settlement is not approved, there are still several major stages of litigation

to complete, including discovery, class certification, summary judgment, and trial. (ECF No,. 44-

2 at 6–7). During each of these stages, there would be "zero benefit to the Settlement Class," and

on balance, Plaintiff concluded that "the benefits of settlement in this case outweigh[ed] the risks

and uncertainties of continued litigation." (*Id.*). Plaintiff and Class Counsel remain confident in

the merits of the case but note that various defenses remain available to Defendant on the merits

and at the class certification stage, and the various risks of continued litigation are sizable. (*Id.* at

6). This settlement ensures that Plaintiff and the Settlement Class will be compensated for 100%

of their likely recoverable damages without further delay.

　　Class Counsel has significant experience in national class actions, including claims against

automobile insurance carriers, and Class Counsel supports the settlement agreement. *See In re*

*Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (giving weight to

the recommendation of experienced and professional trial counsel). Likewise, the Plaintiff and

Class Representative, Vicki Ostendorf, also supports the settlement agreement. Accordingly, the

fifth factor also weighs in favor of settlement approval.

In determining whether to approve a settlement, the Court must "take into account the objections, if any, raised by class members." The reaction of absent class members also weighs in favor of approving the Settlement. As discussed above, notice of this Settlement was issued in a manner consistent with due process and Rule 23. Settlement Class members had an opportunity to object and be heard. "[A] relatively small number of class members who object is an indication of a settlement's fairness." *Brotherton v. Cleveland*, 141 F.Supp.2d 894, 906 (S.D. Ohio 2001). Only one Class Member opted out, and no Class Members objected to the Agreement.  Therefore, this factor weighs in favor of approval of the settlement.

Finally, the public interests weighs in favor of approval of the settlement. The public has an interest in the settlement of class action litigation to end "potentially long and protracted litigation." *Kritzer*, 2012 WL 1945144, at *8. While a case may not necessarily be of general public interest, courts have found there to be a "public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve" and a settlement agreement will end long and protracted litigation. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1025; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990).

Finally, the Court has a responsibility "to ensure that the distribution of the settlement proceeds is equitable." *Dillworth*, 2010 WL 776933, at *6 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Here, the distribution is fair and equitable because Class Members will receive payouts directly related to the recoverable damages they experienced. (ECF No. 44-1 at 5–6). Settlement payments will vary because the tax portion of each payment will vary depending on the ACV of each member's specific vehicle, but each class member who submits a claim "will receive 100% of their likely recoverable damages had this case gone to trial." (ECF No. 44-1 at 4).

### E.  ATTORNEYS' FEES AND SERVICE AWARD

#### A.  Attorneys' Fees

To evaluate whether the amount of an award is reasonable, courts consider: "(1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved." *Kritzer*, 2012 WL 1945144, at *9 *(citing Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Here, Class Counsel is requesting a fee of up to $2,533,561.00 and is not seeking reimbursement of litigation costs. (ECF No. 44-1 at 5). Defendant Grange does not oppose these fees, and under the Settlement Agreement, the fees would be paid separately from the Cash Settlement Benefits and would not reduce the amounts recoverable by Class Members. (*Id.* at 5–6). The amount of fees equals 20% of the maximum Cash Settlement Benefits. All of the relevant factors here support the award of the requested attorneys' fees.

Here, Class Members who opted in will receive 100% of their likely recoverable damages. This represents a significant recovery for class members and weighs in favor of a significant fee award. Because any award of attorneys' fees would be separate from the funds allotted for claims by Class Members, awarding the requested attorneys' fees would not diminish in any way the recovery of class members.

Second, society has an interest in conserving federal judicial resources and seeing individuals compensated for their losses. The public also has interest in "seeing individuals recovering something for their compensable injuries, not protracting litigation." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1025. Likewise, there is also a public interest in "ensuring that

claimants with smaller claims may pool their claims and resources, and attorneys who take on class action cases enable this." *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *12. Class Counsel's effort resulted in a substantial benefit for the Settlement Class members, many of whom "would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant." *Id.* Here, the Settlement allows individuals to recover 100% of their likely recoverable damages and frees up valuable judicial resources. Thus, the public interest factor favors the settlement.

Third, Class Counsel took this case entirely on a contingent-fee basis, and therefore this factor weighs in favor of awarding the fees sought. Class Counsel have not been compensated for any time or expense since the beginning of this litigation, which weighs in favor of granting an award of attorney fees. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011). Class Counsel have made significant investments of time and have advanced costs but have received no compensation in this matter.

The fourth factor—the value of services on an hourly basis—does not weigh against awarding attorneys' fees here. Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional. "Indeed, most courts recognize that fees negotiated and paid separate and apart from the class recovery, as here, are entitled to a 'presumption of reasonableness.'" *Cowit v. CitiMortgage, Inc.*, No. 1:12-cv-869, 2015 U.S. Dist. LEXIS 143156, at *19 (S.D. Ohio Oct. 21, 2015). Given that Class Counsel negotiated a fee to be paid separately from the fund, without reducing the amount to be paid to the Settlement Class Members, and is requesting a percentage on the low end of what this Court typically awards, the Court finds that a lodestar crosscheck is not necessary. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380

(S.D. Ohio 2006) (collecting cases showing that typically the percentage awarded in this District ranges from 20 to 50 percent of the common fund.).

As to the fifth factor, this litigation was complex and therefore merits a significant fee award. While there are similar cases throughout the country, Class Counsel avers that none has gone before a jury yet. (ECF No. 44 at 29). In other cases, litigants have not survived a motion to dismiss under other states' laws, where Plaintiff here has prevailed. (*Id.*). There is also an outstanding appeal before the Sixth Circuit on the issue of whether disputes over valuation of the total loss vehicle must proceed through an appraisal first. (ECF No. 44 at 3, 29). If no settlement is approved, this litigation would still need to proceed through class and merits discovery, class certification, dipositive motions, and trial, as well as any appeals, before a benefit, if any can be achieved, is felt by the class.

Regarding the sixth factor, the Court should also find that the attorneys were highly skilled. Class counsel has served as lead or co-lead counsel in "dozens of consumer class actions in federal and state courts throughout the country." (ECF No. 44 at 30). Class Counsel also notes that the "quality of defense counsel is also important in evaluating the quality of class counsel's work." (*Id.*). Defense counsel, including counsel from a prominent national firm (Baker & Hostetler LLP) is likewise highly skilled. Counsel from both sides have professionally and zealously represented the parties, through the motion to dismiss, extensive mediation and negotiations leading to the settlement agreement, and the pending appeal to the Sixth Circuit.

The Court therefore hereby GRANTS Plaintiff's motion for attorneys' fees in the amount of $2,533,561.00. The fees shall be paid directly to Class Counsel by Grange.

### B.    Service Award

Service payment awards "are common in class action settlement and routinely approved for the simple reasons 'to compensate named plaintiffs' for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 WL 1945144, at *8 (finding service payments of $2,500.00 each for six class representatives to be reasonable). *See also Swigart v. Fifth Third Bank*, No. 1-11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (approving service payments of $10,000.00 each to the two class representatives); *Rotuna v. West Customer Mgmt. Grp.*, LLC, No. 4:09-cv-1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving service award of $3500.00 to a representative plaintiff where the litigation lasted one year). In this case, the Service Award will be paid by Defendant separately so as not to dilute the money set aside to pay claims by Class Members. (ECF No. 44-1 at 6). Class Counsel represents that Plaintiff Ostendorf has assisted class counsel by submitting to interviews with Class Counsel, forwarding documents and information to Class Counsel, assisting Class Counsel in reviewing the Complaint and settlement documents, and conferring with Class Counsel as needed. (*Id.*). Accordingly, approval of the service payment is appropriate here.

### F.    CONCLUSION

For the reasons set forth above, Plaintiff's Unopposed Motion Final Approval of Class Action Settlement and Application for Attorneys' Fees and Service Award (ECF No. 44) is **GRANTED** and the Court hereby **ORDERS** as follows:

**1. Final Certification of the Settlement Class.** The Court finds that the proposed Settlement Class, as defined in the Settlement Agreement and above, meets the requirements of Rule Federal Rule of Civil Procedure 23(a) and Rule 23(b)(3). Accordingly, for the purposes of settlement, the Court certifies the Settlement Class consisting of the following:

> All Grange insureds who submitted a Covered Total Loss Claim and who
> received a Total Loss Claim Payment from Grange that did not include Sales Tax

and/or Title, Transfer, and Service Fees, and who was not subsequently paid Sales Tax and/or Title, Transfer and Service Fees during the Class Period.

Excluded from the Settlement Class is Grange, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

**2. Class Representative.** For purposes of settlement, the Court approves Vicky Ostendorf, as the Class Representative.

**3. Class Counsel.** For purposes of settlement, the Court appoints as Class Counsel for the Settlement Class Kopelowitz P.A., Edelsberg Law, P.A., Spangenberg Shibley & Liber LLP, Shamis & Gentile, P.A., and Dapeer Law, P.A.

**4. Approval of the Settlement Agreement.** The Court **APPROVES** the Settlement Agreement as fair, just, reasonable and adequate to, and in the best interest of the Settlement Class. This Order constitutes final approval of the Settlement Agreement. The Settlement Agreement is binding on the parties to it and on all members of the Settlement Class excepting only those individuals, if any, who timely excluded themselves from the Settlement Class in accordance with the terms of the Settlement Agreement.

**5. Release of Claims.** As of the date this judgment becomes final (meaning that the time for appeal has expired with no appeal taken, all appeals are resolved and none are left pending, or this judgment is affirmed in all material respects after completion of the appellate process), the Class Representative and the Settlement Class, excepting Opt-Outs, are forever barred from bringing or presenting any action or proceeding against any Released Party that involves or asserts any of the Released Claims (as those terms are defined in the Settlement Agreement). The Class Representative and the Settlement Class, excepting Opt-Outs, are deemed to have released and forever discharged the Released Parties from all Released Claims.

**6. Dismissal with Prejudice.** All claims in this action are dismissed with prejudice and without costs against Grange Indemnity Insurance Company, Grange Insurance Company f/k/a Grange Mutual Casualty Company, Grange Property and Casualty, and Trustgard Insurance Company.

**7. Dispute Resolution.** Without affecting the finality of this judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this judgment and the Settlement Agreement and all matters ancillary to the same.

**8. Non-Admission**. This Order and the Settlement Agreement are not evidence of, or an admission or concession on the part of, the Released Parties with respect to any claim of any fault, liability, wrongdoing, or damages whatsoever. In the event that the Effective Date of the Settlement Agreement, does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement, and this Order shall be vacated.  In

16

such event, all orders entered and releases delivered in connection with the Settlement shall be null and void and the Action shall return to its status immediately prior to execution of the Settlement Agreement

**9. Attorney Fees and Service Award.** Class Counsel is awarded attorneys' fees in the amount of $2,533,561.00 and Plaintiff is awarded a Service Award in the amount of $5,000.00, such amounts to be paid Separately by Grange in accordance with the terms of the Settlement Agreement.

There being no just reason for delay, the Clerk of Court is hereby directed to enter final

judgment forthwith pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.


**IT IS SO ORDERED.**



DATED:  December 30, 2020

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**